PALMER, Administratrix, Respondent, vs. SCHULTZ, Appellant.

*February 20—March 9, 1909.*

*Pleading: Amendment of answer: Discretion: Appeal: Harmless error: Evidence: Opinions: Qualification of witness: Special verdict: Form of questions: Evidentiary matters: Death caused by negligence: Intoxication: Instructions to jury: Defining "ordinary care."*

1. In the allowance of amendments to pleadings, especially to answers, a liberal policy should be pursued in furtherance of justice; and ordinarily, where material matter is omitted from an answer by mistake or inadvertence, an amendment should be allowed.

2. In an action for death of one alleged to have been killed by falling, in the nighttime, into an opening where the sidewalk on a viaduct had been torn up by defendant, the allegations as to the time and manner in which decedent met his death were not denied in the answer. At the trial, more than three years after the answer was served, defendant asked leave to amend so as to put such matters in issue. It appeared that the failure to deny those allegations was due to the inadvertence of counsel, but also that prior to service of the answer plaintiff had found a witness who could testify to the facts so alleged; that such witness had been killed about two years later; that plaintiff had relied upon the fact that the averments in question were not denied, and could not now procure any witness to prove the necessary facts if the amendment were allowed. It did not appear that plaintiff was responsible for the delays in bringing the action to trial. *Held,* that the trial court might well have concluded that allowance of the amendment would not be "in furtherance of justice" (sec. 2830, Stats. 1898), and it cannot be said that his refusal to allow it was an abuse of discretion.

3. The admission of evidence as to how long plaintiff's intestate had been dead when found was harmless where there was no denial of the allegations as to the time and manner of his death.

4. A witness shown to have had considerable experience as assistant coroner might testify as to how long a person had been dead when he saw him, the objection that he was not a physician or qualified as an expert going rather to the weight of his testimony than to his competency as a witness.

5. Questions for a special verdict need not cover mere evidentiary matters, nor is there ordinarily any necessity for reciting evidentiary facts therein.

6. Plaintiff's intestate having been killed by falling through an open space in a viaduct, a question for special verdict, "Was the condition of such open space obvious to a traveler on foot crossing the viaduct from the east side toward such opening, exercising ordinary care?" is *held* to have fairly submitted the phase of contributory negligence sought to be covered by a question proposed by defendant, "Under the conditions as to lights, barriers, guard rails, etc., surrounding or adjacent to the open space, . . . was such opening obvious," etc.?

7. So, also, the question "Was such open space properly guarded at the time of the injury?" accompanied by a charge fully defining defendant's duty to maintain suitable guards, fairly submitted the issue, and it was not error not to submit a proposed question, "Did the defendant fail to exercise ordinary care in leaving the opening . . . in the condition as to lights, barriers, guard rails, etc., in which it was left," etc.?

8. So, also, intoxication of the deceased on the night in question was a mere evidentiary fact tending to establish contributory negligence, and was properly submitted to the jury by a general question on the subject of such negligence, accompanied by proper instruction.

9. A charge defining ordinary care to be "such care as a man of ordinary care and prudence would have used under circumstances like those disclosed in the testimony," is *held*, if inaccurate, not to have been misleading in this case merely because it did not say "such care as a man of ordinary care and prudence would *ordinarily* have used" and did not say "under the same or similar circumstances." But the omission of the word "ordinarily" from the definition may sometimes be misleading.

APPEAL from a judgment of the circuit court for Milwaukee county: WARREN D. TARRANT, Circuit Judge. *Affirmed.*

This action is brought by the plaintiff, as administratrix of the estate of Thomas Palmer, deceased, to recover damages for the death of the decedent, who was her son. The defendant entered into a contract with the city of Milwaukee to construct sidewalks on the Sixteenth-street viaduct in said city, agreeing in such contract to maintain suitable barriers, and to provide lights and watchmen, and to take such other pre-

cautions as might be necessary to protect life and property. The negligence relied upon was the failure of the defendant to cause proper barriers to be placed adjacent to the open space caused by the removal of about 1,000 feet of the old sidewalk. The trial resulted in a verdict and judgment for plaintiff, from which judgment this appeal is taken.

The defendant assigns the following errors: (1) Receiving the testimony of the assistant coroner of Milwaukee county, to the effect that in his opinion the deceased had been dead for four or five hours when he saw the body. (2) The refusal of the court to grant a nonsuit. (3) The refusal of the court to permit the defendant to amend his answer. (4) The refusal of the court to direct a verdict for the defendant. (5) The refusal of the court to insert divers questions in the special verdict. (6) Erroneous instructions to the jury. (7) The action of the court in answering the first question in the special verdict. (8) The submission of improper questions in the special verdict.

For the appellant there was a brief by *Doe & Ballhorn,* and oral argument by *J. B. Doe.*

For the respondent there was a brief by *Ryan, Ogden & Bottum,* and oral argument by *Hugh Ryan.*

BARNES, J. The complaint in this action contained the following allegation:

"And said Thomas Palmer, deceased, on the night of the 19th or early morning of the 20th of May, 1904, and while it was still dark, walked from the east side of said viaduct across the roadway for horses, with the intention of going upon the sidewalk upon the west side of said viaduct, and walked into the space or hole left where said sidewalk had been torn up, and fell to the ground some forty feet below and was killed."

The answer denies that defendant neglected to cause proper barriers to be erected, denies that he failed to take suitable measures for the protection of persons walking upon said via-

duct, and "denies expressly that the death of said plaintiff's decedent was caused by any neglect on his part to provide suitable guards for the protection of life and property, but alleges, on the contrary, that the accident which caused the plaintiff's decedent's death was occasioned by reason of the negligence or carelessness of plaintiff's decedent directly contributing thereto, and that defendant was in no wise responsible through any negligence or carelessness on his part for the death of plaintiff's decedent."

The answer further alleges "that the accident received by him [the decedent] and which caused his death was due to the carelessness or negligence of said plaintiff's decedent himself contributing directly thereto."

That these denials and averments of the answer do not put in issue the allegation of the complaint as to the time and manner in which the plaintiff's decedent met his death seems too clear to admit of serious controversy. The contributory negligence of the decedent, and the lack of negligence on the part of the defendant, are well pleaded; but it is not denied that while it was dark on the night of May 19th, or the early morning of May 20th, the deceased walked from the east side of the viaduct across the roadway for horses, with the intention of going upon the sidewalk on the west side of the viaduct, and that in so doing he walked into a space or hole left by the removal of the old sidewalk and fell to the ground a distance of forty feet and was killed.

One of the errors principally relied upon was the refusal of the court to permit the defendant to so amend his answer as to put in issue the averments of the complaint as to the time and manner in which Thomas Palmer met his death. If the ruling of the trial court in this behalf was not an abuse of sound judicial discretion, then the errors assigned because of the admission of the testimony of the witness Grundmann, and because of the failure of the court to either grant a nonsuit or direct a verdict, are untenable.

The affidavits filed in support of the motion to amend show·
that the averments in question were not denied because of the·
inadvertence of the counsel who prepared the answer, and that.
the defendant was not responsible for such omission.   The ad-- ,
ministration of the law requires that a policy of liberality be·
pursued in the allowance of amendments that are in further-
ance of justice.   This is particularly true of permitting
amendments to answers.   Ordinarily the plaintiff may dis-
continue his action and begin over, if the right of amendment
is denied, while the defendant is without remedy if leave to·
amend is refused.   *Thorn v. Smith,* 71 Wis. 18, 24, 36 N.
W. 707; *Carmichael v. Argard,* 52 Wis. 607, 610, 9 N. W.
470.   And ordinarily, where material matter is omitted
from an answer by mistake or inadvertence, an amendment
should be allowed.   *Gregory v. Hart,* 7 Wis. 532; *Vilas v..
Mason,* 25 Wis. 310.   And it may be an abuse of discretion
to refuse to permit a defendant to amend his answer by strik-
ing therefrom an admission improvidently made.   *Hepp v..
Huefner,* 61 Wis. 148, 20 N. W. 923.   Numerous other·
cases mght be cited to show that amendments that are in fur-
therance of justice should be liberally dealt with by trial
courts.   *Ill. S. Co. v. Budzisz,* 106 Wis. 499, 503, 82 N. W.
534; *Smith v. Dragert,* 65 Wis. 507, 27 N. W. 317; *Gates v..
Paul,* 117 Wis. 170, 182, 94 N. W. 55.

It is not contended by the respondent that if the amend-
ment sought was in furtherance of justice it might not have·
been allowed by the trial court under sec. 2830, Stats.
(1898), but it is argued that under the facts presented to the·
court in this case it was not an abuse of discretion to refuse·
leave to amend.   The affidavits filed in opposition to the mo-
tion for leave to amend in substance showed : That prior to the·
time the answer was served the plaintiff had found a witness·
who could and would testify to the manner in which decedent..
met his death as averred in the complaint; that the answer
was served in October, 1904; that the action had been noticed.

for trial and was upon the point of being tried several times
after issue was joined and before January, 1908, when the
motion to amend was made on the trial after plaintiff had
rested her case; that plaintiff relied upon the fact that the
averments of the complaint as to the time and manner in
which Palmer met his death were not put in issue by the an-
swer; that the witness first procured to prove such facts was
killed in a railroad accident in October, 1906; and that
plaintiff was unable to procure any witness to prove the neces-
sary facts if the amendment were allowed, although she might
have done so if there had been a timely joinder of issue on the
fact involving the manner in which decedent came to his
death.

The accident apparently happened at a time and place
where the witnesses to how it occurred would not be numer-
ous, if there were any such. It was not impossible that such
evidence might be found even after the death of the witness
relied on. But after the lapse of nearly three and one-half
years after issue had been joined, the difficulty of procuring
such testimony, if any existed, might well be so great as to
amount to an impossibility, and it is difficult for this court to
say that a meritorious cause of action might not be defeated
if the amendment were allowed. In this case it might be a
great hardship to the plaintiff, after the lapse of so long a
time, to compel her to procure testimony to prove a fact that
had been admitted. She was entitled to rely on such admis-
sion, and it would not be just that she should lose her cause of
action because at a late date she was obliged to secure evi-
dence that she might be unable to discover even though it ex-
isted. It does not appear that she was responsible for the
delays in bringing the action to trial. Under the facts pre-
sented to the trial court it might well have concluded that the
allowance of the amendment would not be in furtherance of
justice as required by sec. 2830, Stats. (1898), and this court
at least cannot say that the trial judge committed an abuse of
discretion. The following cases amply sustain this view of

the law: *St. Clara F. Acad. v. N. W. Nat. Ins. Co.* 101 Wis. 464, 466, 77 N. W. 893; *Ill. T. & S. Bank v. Alex. Stewart L. Co.* 119 Wis. 54, 94 N. W. 777; *Ballston Spa Bank v. Marine Bank,* 16 Wis. 120, 135; *Longwell v. Mierow,* 130 Wis. 208, 109 N. W. 943; *Phœnix Mut. L. Ins. Co. v. Walrath,* 53 Wis. 669, 10 N. W. 151.

The motions for a nonsuit and for a directed verdict being based on the assumption that there was no evidence showing or tending to show how Palmer met his death, and that the manner in which he lost his life was an issuable fact in the case, or the defendant should have been permitted to make it so by amendment, it follows that no error was committed by the court in denying such motions.

It is alleged that the court erred in receiving the evidence of the witness Grundmann, giving his opinion as to the length of time Palmer was dead when the witness saw him, because he was not a physician and was not shown to have had the necessary expert knowledge to qualify him to testify. In view of the failure of the answer to deny the time or manner in which Palmer met his death the admission of this evidence was harmless. In any event he was shown to have had considerable experience as assistant coroner of Milwaukee county, and we think the objection made went to the weight that should be given the testimony rather than to the competency of the witness.

Error is assigned because the court refused to submit this question in the special verdict:

"Under the conditions as to lights, barriers, guard rails, etc., surrounding or adjacent to the open space on the west side of Sixteenth-street viaduct, on the night of May 19, 1904, was such opening obvious to a traveler on foot crossing the viaduct from the east side toward the opening?"

In lieu thereof the court submitted the following question:

"Was the condition of such open space obvious to a traveler on foot crossing the viaduct from the east side toward such opening exercising ordinary care?"

The appellant insists that the question should recite the existence of lights, barriers, etc.  The respondent contends that there was a material dispute in the evidence in reference to the existence and location of lights, and that the testimony tended to show that there were no barriers whatever at the point where the decedent entered and where he evidently supposed the west sidewalk to be, and that therefore the question requested was improper and the one submitted by the court was proper.  The material question was whether the hole in the sidewalk was so guarded that its dangerous character would be observed by a person approaching it in the direction in which the deceased approached it, if such person exercised ordinary care.  This question fairly submitted to the jury the phase of decedent's alleged contributory negligence which defendant sought to cover by the question proposed by him. There is no necessity for covering mere evidentiary matters by questions in a special verdict, and neither is there ordinarily any necessity for reciting evidentiary facts in questions that are submitted.  *Zimmer v. Fox River Valley E. R. Co.* 118 Wis. 614, 617, 618, 95 N. W. 957; *McCoy v. Milwaukee St. R. Co.* 88 Wis. 56, 61, 59 N. W. 453; *McLimans v. Lancaster,* 63 Wis. 596, 603, 23 N. W. 689; *Blankavag v. Badger Box & L. Co.* 136 Wis. 380, 117 N. W. 852, 854; *Wisconsin F. L. Co. v. Bullard,* 119 Wis. 320, 324, 96 N. W. 833. Many matters of evidence might bear on the alleged negligence of the decedent in not observing the hole, but after all the question was: Could he have observed it had he exercised ordinary care?

The defendant also claims that it was error not to submit to the jury the following question:

"Did the defendant fail to exercise ordinary care in leaving the opening on the west side of the viaduct in the condition as to lights, barriers, guard rails, etc., in which it was left on the night of May 19, 1904?"

Instead of submitting the question asked, the court submitted the following question to the jury:

"Was such open space (as is referred to in question No. 1) properly guarded at the time of the injury to the decedent?"

The charge given to the jury under the foregoing question in the special verdict is quite full. It defines the duty of the defendant in reference to the maintenance of suitable guards to warn travelers of existing dangers. No exception is taken to such charge. The question submitted fairly covers the real issue, and under the authorities cited no error was committed in refusing to submit the question propounded by the defendant.

The defendant also requested that the following question be submitted to the jury: "Was the deceased, Thomas Palmer, on the evening of May 19, 1904, under the influence of liquor to any considerable extent?" The court refused to submit the question. The alleged intoxication of decedent was an evidentiary fact bearing upon the defense of contributory negligence. As was said in *Fitzgerald v. Weston*, 52 Wis. 354, 9 N. W. 13:

" . . . If the evidence tended to prove that the deceased was intoxicated in any degree at the time of the injury, that circumstance, with other facts in the case, should have gone to the jury on the question of contributory negligence."

This rule of law is approved in *Seymer v. Lake*, 66 Wis. 651, 29 N. W. 554. But it does not follow that the question should have been submitted to the jury. An affirmative answer would not necessarily entitle the defendant to judgment on the verdict, although it might cast upon the plaintiff the burden of showing that decedent used ordinary care. *Burns v. Elba*, 32 Wis. 605. The jury was required to find whether any want of ordinary care on the part of the decedent contributed to produce his injuries. Under this question the court charged the jury as follows:

"Intoxication in any degree at the time of the injury is a circumstance to go to the jury on the question of negligence

or want of ordinary care.  If you find that the deceased at the time of the injury was so intoxicated as to be incapable of managing and conducting himself with ordinary care and prudence, then you must find the deceased was not in the exercise of ordinary care; and if you find that this want of ordinary care and prudence did contribute in the slightest degree to produce the injury complained of, then you should answer question No. 6 yes."

Intoxication was an evidentiary fact tending to establish want of ordinary care and was properly submitted to the jury under the question dealing generally with want of ordinary care.  A portion of the instruction is subject to criticism, but no exception is taken thereto.

The court charged the jury as follows:

"By 'ordinary care' is meant such care as a man of ordinary care and prudence would have used under circumstances like those disclosed in the testimony in this case."

Two objections are taken to this charge: (1) Because the court did not say that "ordinary care" was such care as a man of ordinary care and prudence would *ordinarily* have used; and (2) in not using the words "under the same or similar circumstances," instead of those used by the court, "under circumstances like those disclosed by the testimony in this case."  The latter criticism on the charge is entirely unsubstantial and ephemeral in its character.  The definition of "ordinary care" that has met the approval of this court in a long line of decisions is that it is such care "as the great mass of mankind *ordinarily* use in the same or similar circumstances."  *Nass v. Schulz,* 105 Wis. 146, 150, 81 N. W. 133; *Duthie v. Washburn,* 87 Wis. 231, 233, 58 N. W. 380; *Hennesey v. C. & N. W. R. Co.* 99 Wis. 109, 74 N. W. 554; *Ward v. M. & St. P. R. Co.* 29 Wis. 144; *Stafford v. Chippewa Valley E. R. Co.* 110 Wis. 331, 354, 85 N. W. 1036; *Dehsoy v. Milwaukee E. R. & L. Co.* 110 Wis. 412, 85 N. W. 973; *Schrunk v. St. Joseph,* 120 Wis. 223, 97 N. W. 946, and many others that might be cited.  It would save this court some trouble if a definition so often repeated were adhered to,

but it is not.   The omission of the word *"ordinarily"* from the definition may sometimes be misleading.   *Schrunk v. St. Joseph,* 120 Wis. 223, 231, 97 N. W. 946.   Persons of ordinary care and prudence may do negligent acts, so that the real question, after all, is not what a person of ordinary care might have done if placed in the situation the decedent was placed in here, but what would such a person ordinarily do if placed in such a situation?   On the other hand, the possibility of injury resulting from such an instruction is remote.   The distinction between the correct definition and that here given *is so* refined that it is not apt to mislead the ordinary jury.   The statute (sec. 2829) requires this court to disregard immaterial errors.   Reversing causes because . of them prolongs and renders litigation unnecessarily burdensome on litigants. So this court has held in several well-considered cases that the omission of the word here complained of was not reversible error where it was apparent no injury resulted therefrom. The instruction here given was taken almost *verbatim* from one given by the same trial judge in *Hanlon v. Milwaukee E. R. & L. Co.* 118 Wis. 210, 223, 95 N. W. 100, 104, where it was said that "the instruction assailed is strictly accurate." The criticism here made on the instruction was not made in that case, so the decision is wanting in the force it might otherwise have as a precedent because of that fact.   However, in *Coppins v. Jefferson,* 126 Wis. 578, 583, 105 N. W. 1078, and in *Pumorlo v. Merrill,* 125 Wis. 102, 107, 103 N. W. 464, like instructions are approved.   We think no prejudicial error resulted from the instruction given if it be conceded that the definition by the court of "ordinary care" is inaccurate.

Some other errors are assigned.   They have been carefully examined, but we think none of them are tenable and that no useful purpose would be served by discussing them, and that the judgment of the court below should be affirmed.

*By the Court.*—Judgment affirmed.