SUFFERLING, Respondent, vs. HEYL & PATTERSON, Appellant.

*April 24—May 11, 1909.*

*Master and servant: Fellow-servants: Subcontractor's servants: Negligence: Appeal and error: Remarks of court: Harmless error: Instructions to jury: Trial: Special verdict: Special interrogatories: Ordinary care: Damages: Burden of proof.*

1. The servant of a general contractor and those of his independent subcontractor, all being engaged in executing a particular enterprise, are not fellow-servants.
2. There is no relation of master and servant between a general contractor and the servant of his independent subcontractor.
3. In an action against a principal contractor, where the servant of a subcontractor was injured by the falling of a hoisting apparatus which replaced a safe and suitable apparatus originally used, remarks of the court, in the presence of the jury, that no actionable negligence could be found unless the unsuitable apparatus was erected with the knowledge of the principal contractor or the change was seasonably brought to his attention before the injury, and also remarks in submitting the case to

the jury, that unless there was negligence on the part of the principal contractor's agent in charge of the work respecting the unsuitable apparatus the question relating to defendant's wrongful conduct should be answered in the negative, if erroneous, are so significantly in defendant's favor as to be harmless on his appeal.

4. In an action for injuries to a servant caused by an unsuitable hoist, where knowledge, actual or constructive, of the defendant of the unsuitable character of the hoist was charged in the complaint and denied in the answer, if that issue was a vital matter it should be submitted as a special question of the special verdict, if requested.

5. While it is better that the law governing special verdicts be administered according to its spirit and letter and to a somewhat technical degree where specific questions are requested covering well defined vital facts in issue, it is permissible for trial courts to exercise a considerable measure of discretion in that regard, which is not subject to review unless the statutory right is prejudicially invaded.

6. In a personal injury case an instruction to the jury: "By ordinary care is meant such care as a man of ordinary care and prudence would have used under circumstances like those disclosed in the testimony in this case," while it may be harmlessly inaccurate under the circumstances of the particular case, had better be phrased: "Ordinary care in the abstract is such care as the great mass of mankind ordinarily exercise, and as applied to any particular case it is such care as the great mass of mankind ordinarily exercise under the same or similar circumstances."

7. In a personal injury case an instruction to the jury: "In assessing damages in this case *you may allow plaintiff*, by way of compensation, such sum as will reasonably compensate him for such pain and suffering and for such loss of time as the evidence satisfies you *with a degree of reasonable certainty*, is the natural and probable consequence of the injury which he sustained," while faulty in that it is in form as if the jury were expected to award compensation to the plaintiff instead of merely to find, as a fact, what sum in money was equivalent to his loss, and also in that it contemplates the existence of two or more degrees of reasonable certainty, with the jury left to imagine the nature of the different degrees, is not necessarily prejudicial.

8. Material facts in issue in a civil case, in order to be found in favor of the party upon whom the burden of proof rests, must be established to the satisfaction of the jury by a preponderance of the evidence to a reasonable certainty.

APPEAL from a judgment of the circuit court for Milwaukee county: WARREN D. TARRANT, Circuit Judge. *Affirmed.*

Action to recover for a personal injury.

In brief, plaintiff's claim was this: Defendant's servants negligently used a light hoisting apparatus, suitable only for lifting light articles, to elevate a heavy timber to the top of a building which such servants, together with plaintiff as an employee of a subcontractor of defendant, were engaged in erecting. The apparatus consisted of a scantling, extending out a few feet from the edge of the roof, to which a pulley and block, threaded with a hoisting rope with proper connections, was attached. The scantling was too weak and too insecurely braced to be suitable to sustain such a heavy weight as the one in question. Just as the timber was about to clear the ground plaintiff, in the due course of his work, stepped out of the building nearly under the overhanging scantling without realizing the condition aforesaid or being guilty of any want of ordinary care in that regard, when the scantling broke and fell, a piece thereof striking plaintiff and severely injuring him. The defendant knew, or ought to have known in the exercise of ordinary care, that the hoist as erected was entirely unsuitable for the use to which it was put and was liable, in so being used, to break, as it did, and injure persons who might, in the exercise of ordinary care, be, rightfully, in the pathway of falling pieces or parts of the apparatus, or articles in the process of being lifted thereby, and be injured. All facts upon which negligence was predicated were duly put in issue.

There was evidence to the effect that plaintiff was injured in the manner claimed; that he was, as alleged, at the time the hoist broke, in the regular performance of his duty as an employee of defendant's subcontractor; and that the hoist while being operated by defendant's servants broke, as claimed, with the consequences alleged. There was evidence tending to show that the hoist was not designed for any such

heavy work as that in course at the time of the accident; that, formerly, there had been one in place suitable for such work, but that it had been replaced by the subcontractors, a few days before the accident, by the lighter one because of the other being in the way, and that such lighter one was used at such time as the heavier one had been, though it was entirely unsuitable for the heavy work; that plaintiff did not know of the condition so created at the time the hoist broke; that he walked out of the building under, or nearly under, the projecting joist just as two men on the floor above pulled on the rope so as to raise the timber from the ground, when the supporting scantling broke and the piece came down upon him, as alleged, fracturing his skull and otherwise injuring him.

Counsel for defendant unsuccessfully moved the court to submit, as parts of a special verdict, several questions covering the subject of whether the insecure hoist was erected in place of the secure one, to the knowledge of defendant's representative in general charge of the work, and whether such representative had knowledge, actual or constructive, of the insufficiency.

The jury found substantially as follows: Defendant, in prosecuting the heavy work with the hoist, failed to use ordinary care. Such failure was the proximate cause of the injury. Defendant, in the exercise of ordinary care, ought reasonably to have foreseen that some one might probably be injured as a result of the hoist being used as it was at the time of the accident. Plaintiff did not assume the risk of being injured by the insecure hoist. He was not guilty of contributory negligence. He was damaged to the extent of $2,000.

For the appellant there was a brief by *Doe & Ballhorn,* and oral argument by *J. B. Doe.*

For the respondent there was a brief by *Rubin & Zabel,* and oral argument by *W. C. Zabel.*

MARSHALL, J.   Complaints made respecting rulings on evidence have received the attention which, in the judgment of the court, they merit without our discovering any sufficient ground for disturbing the judgment.   A reference to such rulings is omitted because no one of them seems to call for a decision respecting it of sufficient importance as a precedent to require discussion with references and a statement of reasons on principle or authority, or both, why the ruling was either not erroneous, or, if otherwise, not harmful.

The point is made that the claim of respondent in the complaint was that there was negligence in putting up and leaving in place for use the unsuitable hoist, while, on the trial, recovery was sought solely on the ground of negligence in using an unsuitable hoist by appellant's servants with its knowledge, actual or constructive, thereof; that there was a fatal variance between the complaint and the evidence. Without conceding that, under the circumstances, there was such a variance, if the situation be as counsel suggest, it is the opinion of the court that the contention is based on a misconception of the complaint.   It expressly, or by reasonable inference, states the ground of negligence counsel suggest was relied upon at the trial.

The claim is made that there was no evidence that appellant knew of the unsuitable hoist having been substituted for the suitable one and, therefore, if there was any negligence on the occasion in question, it was merely negligence of defendant's employees, and, notwithstanding they were servants of the general contractor and plaintiff was a servant of an independent subcontractor, all were fellow-servants, and, therefore, the motion for a nonsuit should have been granted. That presents the question of whether servants of a general contractor and those of his independent subcontractor, all being engaged in executing a particular enterprise, as the construction of or repair of a building, are fellow-servants within the meaning of that term as used in the law of negligence.

The counsel's deduction from the fellow-servant law seems to be illogical. It is elementary that the results of negligence of an independent subcontractor or that of his servants imputable to him cannot be charged to his principal. It must follow that servants of the latter are not fellow-servants with the employees of the subcontractor.

The reason why a general contractor is not liable for the negligence of the servants of his independent subcontractor is because there is no master and servant relation existing between such general contractor and such servants (*Whitney & S. Co. v. O'Rourke,* 172 Ill. 177, 50 N. E. 242), hence no duty and none of the responsibilities incident to such relation.

As counsel fail to support the claim above suggested other than by assertion and the law seems quite elementary, as we have indicated, time will not be taken to further pursue the subject or to point to judicial holdings in respect thereto.

Several errors are assigned upon the theory that defendant was not chargeable with negligence of its servants in the use of the insufficient hoist unless it had actual or constructive notice of the substitution thereof for the suitable hoist and notice, actual or constructive, of the insufficiency of the substituted appliance. The court remarked in the presence of the jury during the argument that there could be no actionable negligence found unless the unsuitable hoist was erected with knowledge of appellant, or the change was seasonably brought home to it before the accident. Also in submitting the case to the jury care was taken to explain that unless there was negligence on the part of appellant's agent in charge of the work respecting the unsuitable hoist, the question on the subject of appellant's wrongful conduct should be answered in the negative. Whether that was strictly correct or not we will not take time to consider. If it were not, the error was significantly in appellant's favor. There was evidence to go to the jury on the subject, as we read the record. So the question strenuously claimed to be vital to the right to

recover was passed upon in respondent's favor upon some credible evidence.

True, knowledge, actual or constructive, of appellant of the existence of the unsuitable hoist was charged in the complaint and denied in the answer. Therefore, if that were a vital matter, as the trial court and all parties concerned seem to have supposed it was, it should have been submitted to the jury by a specific question so framed as to direct attention to the precise matter, as requested by appellant's counsel. Such is the command of the statute (sec. 2858, Stats. 1898), and such is the only proper administration of it, as has over and over again been decided. *Lee v. C., St. P., M. & O. R. Co.* 101 Wis. 352, 77 N. W. 714; *Bigelow v. Danielson,* 102 Wis. 470, 473, 78 N. W. 599; *Schrunk v. St. Joseph,* 120 Wis. 223, 97 N. W. 946; *Olwell v. Skobis,* 126 Wis. 308, 319, 105 N. W. 777.

It were better that the special verdict law be administered according to its spirit and letter and to a somewhat technical degree where specific questions are requested covering well defined vital facts in issue. However, it is permissible for trial courts to exercise a considerable measure of discretion. Unless they exceed that field so as to prejudicially invade the statutory right to a special finding on the material issues of fact, as was the case in *Rowley v. C., M. & St. P. R. Co.* 135 Wis. 208, 115 N. W. 865, the importance of stability of initial determinations, except in case of a probable substantial wrong result being within reasonable probabilities, and of speedy economical termination of judicial controversies, require the beneficent statute, so often referred to (sec. 2829, Stats. 1898), to be efficiently applied.

Error is assigned because the trial court said to the jury:

"By ordinary care is meant such care as a man of ordinary care and prudence would have used under circumstances like those disclosed in the testimony in this case."

That is a peculiar phrasing of the rule the learned trial judge purposed stating. It seems to be the one used generally

in the particular jurisdiction in question. It has been several times challenged as being wrong and been criticised. *Hanlon v. Milwaukee E. R. & L. Co.* 118 Wis. 210, 95 N. W. 100; *Palmer v. Schultz,* 138 Wis. 455, 120 N. W. 348. In the first case the question presented was whether the term "such care as a man of ordinary care" is substantially the same as "such care as the great mass of mankind," and the court said it covered the vital idea, but that the latter phrasing was preferable. In *Palmer v. Schultz, supra,* the same instruction was criticised, but passed as harmlessly inaccurate under the circumstances. It seems that it is also harmlessly imperfect in this case, but, inasmuch as this particular phrasing of ordinary care has been now three times suggested as not the best way to state the principle, and to the end that so simple a matter may be given to the jury in such a manner as to avoid such frequency of attack and criticism, it is again suggested that the phrasing of the rule so often approved here be used: ordinary care in the abstract is such care as the great mass of mankind ordinarily exercise, and as applied to any particular case it is such care as the great mass of mankind ordinarily exercise under the same or similar circumstances.

The court instructed the jury that:

"In assessing damages in this case, gentlemen, *you may allow plaintiff,* by way of compensation, such sum as will reasonably compensate him for such pain and suffering and for such loss of time as the evidence satisfies you *with a degree of reasonable certainty,* is the natural and probable consequence of the injury which he sustained."

The instruction is faulty in that it is in form as if the jury were expected to award compensation to the plaintiff instead of merely to find, as a fact, what sum in money would be an equivalent for his loss. Again it is faulty in that it contemplates the existence of two or more degrees of reasonable certainty susceptible of being established by evidence in such a case, and the jury were left to understand, possibly, that a

fact affirmed by plaintiff to exist and denied by the defendant, in order to be found was required to be established to some one of the several degrees, while they were left, possibly, to imagine the nature of the different degrees. The claim that the language was confusing is not entirely without merit, though we hardly think the jury could have been prejudicially misled. They should have been told, substantially, that in answering the question they should name such sum as they found from the preponderance of the evidence to a reasonable certainty would be required to fairly compensate plaintiff in money for such loss of time and such pain and suffering as they were so satisfied was chargeable to the injury. However, as suggested, it does not seem that the novel method of putting the matter could have reasonably worked any harm.

The rule is that the material facts in issue in a civil case, in order to be found in favor of the party upon whom the burden of proof rests, must be established to the satisfaction of the jury by a preponderance of the evidence to a reasonable certainty;—must be established by a preponderance of the evidence, is the common way of stating the matter, but that means to a reasonable certainty. The use of the latter words has been approved (*Pelitier v. C., St. P., M. & O. R. Co.* 88 Wis. 521, 60 N. W. 250; *Grotjan v. Rice,* 124 Wis. 253, 102 N. W. 551), and failure to use them, when requested specially, unless the jury are adequately instructed otherwise, has been condemned (*Ward v. C., M. & St. P. R. Co.* 102 Wis. 215, 219, 78 N. W. 442). So, true, as the trial court said, the jury were required to be satisfied from the evidence to a degree of reasonable certainty. They could hardly be satisfied to any such degree of certainty unless so satisfied from the evidence that the major probabilities were accordingly; in other words, without being satisfied from the preponderance of the evidence. They could hardly be satisfied from the evidence to a degree of reasonable certainty without

being so satisfied from the preponderance of the evidence to a reasonable certainty. It were better, however, that new and somewhat obscure and inaccurate methods of phrasing a simple proposition of law should not be indulged in.

*By the Court.*—The judgment is affirmed.