WAWRZYNIAKOWSKI, Respondent, vs. HOFFMAN & BILLINGS
MANUFACTURING COMPANY, Appellant.

*April 6—May 2, 1911.*

*Limitation of actions: Personal injury: Notice: Master and servant:
Negligence: Unsafe place: Right of servant to be there: Ques-
tions for jury: Special verdict: Instructions to jury.*

1. Under ch. 307, Laws of 1899, amending subd. 5, sec. 4222, Stats.
(1898), so as to provide that notice of a personal injury need
not be served if an action be brought and a complaint actually
served within one year, such complaint is not a mere substitute
for the notice, and if the first action is dismissed the plaintiff
will not be limited in a subsequent action to the same grounds
of negligence alleged in his previous complaint.

2. Where plaintiff, a fourteen-year-old boy employed to do general
work about a factory, was directed by the foreman to draw
some oil from a barrel which stood four or five feet distant
from a machine in which was a rapidly revolving saw, and was
injured by contact with the saw while attempting, as he claimed,
to light a gas jet immediately above the saw, it is *held* that. un-
less he found or had good reason to believe that it was neces-
sary for him to light the gas in order to draw the oil, he had no
business to be where he was when hurt and the employer is
not liable.

3. Whether in this case plaintiff had reasonable grounds for believ-
ing that it was necessary for him to light the gas in order to
do his work is *held*, upon conflicting evidence, to have been a
question for the jury.

4. Where specific acts of negligence are charged in the complaint,
denied by the answer, and litigated upon the trial, a special
verdict should contain specific questions covering those alleged
acts, and denial of a request for the submission of such ques-
tions is error.

5. An issue of fact necessarily or properly presented by the plead-
ings should be submitted by a separate question in the special
verdict, but items of evidence or facts which merely tend to
prove or disprove the issuable facts need not be submitted. *Suf-
ferling v. Heyl & Patterson*, 139 Wis. 510, and *Steber v. C. & N.
W. R. Co.* 139 Wis. 10, explained and distinguished.

6. It being a vital question in this case whether the place to which
plaintiff was sent for the purpose of drawing oil was light

enough to permit him to do so without the use of artificial light, and defendant having asked the submission of a specific question covering that point, the error in refusing such request was not cured by submission of a question as to whether plaintiff at the time of the injury was engaged in work at a place where he was authorized to be, since (1) the question submitted was too general in form, and (2) it was a matter of dispute whether plaintiff was attempting to light the gas or to replace a lost nipple on the gas jet, and the question submitted was probably intended to meet the latter claim.

7. Nor was such error cured by submission of a further question to the effect that, if the jury found that plaintiff was working at a place where he was authorized to be, they should then answer whether such place was a reasonably safe one in which to do his work; especially where the court refused to instruct that they should answer in the affirmative unless they found it was so dark near the oil barrel that plaintiff could not reasonably be expected to draw the oil without artificial light, and on the contrary told the jury they might find in the negative if any one of several conditions existed.

8. The proper question to submit under the facts of the case would have been whether, in view of plaintiff's age, experience, and intelligence, and the instructions he had received, if any, he had reasonable grounds for believing that on account of the darkness it was necessary for him to light the gas in order to properly perform his work; and not whether "artificial light was *required* to enable one to draw oil from the barrel."

9. It is the duty of the court to frame the special verdict; and whereby a written request, even though not strictly correct in form, its attention is sharply called to an issue which ought to be submitted, it should frame and submit the correct question.

10. Whether the error in refusing to submit a specific question in this case might have been rendered harmless by a suitable instruction to the jury, not decided. The statute relating to special verdicts provides for no such substitution, and the safer practice is to submit the specific question.

11. The evidence being uncontradicted that the saw by which plaintiff was hurt was started by another employee to enable him to oil a bearing, which he was engaged in doing at the time of the accident, it was error to refuse to give an instruction requested by defendant to the effect that all evidence relative to an alleged defect in the belt-shifting device, by which the saw might have been started automatically, should be disregarded.

APPEAL from a judgment of the circuit court for Milwaukee county: F. C. ESCHWEILER, Circuit Judge. *Reversed.*

The complaint alleges that on November 12, 1901, the plaintiff, then a minor, was employed by defendant doing general work about its factory and machine shop as directed by the foreman in charge; that in the performance of his duties he was required to draw oil from certain barrels located near a pipe-cutting machine which consisted of a stand, wheels, shafting, and belt shifter or lever, and saws, which saws were made to revolve with great rapidity when in use, by means of a lever attached to said machine; that just above such machine there was a gas jet for use in supplying light, if necessary, when the machine was in operation, and also to furnish light in that immediate vicinity; that the oil barrels were in a dark place, and that plaintiff found it necessary on this occasion to light the gas in the jet above the machine, and while engaged in so doing he came in contact with the revolving saw, suffering injuries to his right arm and hand; that the pipe-cutting machine was maintained in a defective condition, in that the lever by which the motion of said saws was controlled was so defective and out of repair that power was conveyed to said saws without the application of any force to said lever. The complaint also alleged that an action was brought on behalf of the plaintiff, by guardian, against the defendant within one year after the accident, and that this action was commenced within one year after the time plaintiff became twenty-one years of age. The answer admitted the injury and put in issue the other material allegations of the complaint, and set forth affirmatively that the notice of injury required by sec. 4222, Stats. (1898), was not given and that the cause of action had been compromised and settled. The jury returned the following special verdict:

"(1) Was the plaintiff injured on November 12th, 1901, by having his right arm cut by a saw in defendant's machine

shop while in defendant's employ? *A.* (Answered by the court, by consent of counsel.)   Yes.

"(2) Was the claim of the plaintiff for damages sustained on account of the injuries received by the plaintiff November 12th, 1901, compromised and settled between the parties before the commencement of this action?   *A.* No.

"(3) At the time of receiving the injuries of which he complains, was the plaintiff engaged in work at a place in which he was authorized by the defendant to engage in the performance of such work?   *A.* Yes.

"(4) If you answer the third question 'Yes,' then was such place so furnished a reasonably safe place in which to do his work?   *A.* No.

"(5) If you answer the fourth question 'No,' then was such failure to furnish a reasonably safe place a proximate cause of the plaintiff's injury?   *A.* Yes.

"(6) If you answer the fourth question 'No,' then did the defendant negligently fail to warn the plaintiff of the danger of working at such place?   *A.* Yes.

"(7) If you answer the sixth question 'Yes,' then was such failure to so warn the plaintiff a proximate cause of the plaintiff's injury?   *A.* Yes.

"(8) Was there any want of ordinary care on the part of the plaintiff which contributed to his injury?   *A.* No.

"(9) If the court shall finally determine that the plaintiff is entitled to recover, at what sum do you assess his damages?   *A.* $5,000."

Judgment was entered in favor of the plaintiff for $5,000 damages together with costs, from which judgment defendant appeals.

For the appellant there was a brief by *Doe & Ballhorn,* and oral argument by *J. B. Doe.*

For the respondent there was a brief by *Glicksman, Gold & Corrigan,* and oral argument by *W. L. Gold* and *W. D. Corrigan.*

BARNES, J.   Twelve errors are assigned and argued on this appeal.   Several of the assignments embody a number of distinct and independent propositions, any one of which, if

resolved in favor of the appellant, it is argued, would consti-
tute reversible error.    Inasmuch as there must be a new trial
of the case we will discuss as many of the twenty-odd points
raised as we think would be helpful to the trial court on a
retrial of the action.    The appellant is obviously wrong in
some of its contentions, and a number of questions discussed
are not likely to arise when the case is again tried.

1. The action is brought to recover damages for a personal
injury which the plaintiff sustained on November 12, 1901,
and was commenced March 1, 1909.    The plaintiff was a
minor when the injury occurred and this action was brought
within one year after he became of age.    On April 24, 1902,
plaintiff commenced an action by guardian *ad litem* to recover
damages for the same injury.    A judgment of dismissal was
entered in such action on January 8, 1903.    The effect of
such judgment was considered by this court on an appeal in
such action, reported in 137 Wis. 629, 119 N. W. 350.    This
court held as a matter of law that the attorney for the plaintiff
had no authority to stipulate that judgment be entered on the
merits.    The jury found as a matter of fact in the present
case that the cause of action had not been compromised and
settled.    Two grounds of negligence were set forth in the
complaint in the first action: failure to guard a saw and fur-
nishing an incompetent fellow-servant.    Other grounds of
negligence are set forth in the present action; one of them the
failure of the master to furnish sufficient light to enable the
plaintiff to do his work.    One of the vital questions on the
trial was whether the shop was so dark at the place where
plaintiff was requested to draw oil that he was justified in
lighting a gas jet in the vicinity of the oil barrel so as to have
sufficient light to do his work properly.    This gas jet was lo-
cated a few inches above a rapidly revolving saw, which ap-
parently was not being operated by any one and was un-
guarded, and plaintiff claims that he received his injury while
engaged in lighting this jet.    No notice of injury was served

such as is provided for by subd. 5 of sec. 4222, Stats. (1898). The plaintiff contends that service of such notice was unnecessary because an action to recover damages for the injury had been commenced within one year after it happened. The defendant asserts that the complaint in the former action is simply a substitute for the notice required, where action is not brought within the year, and that it must be treated in the same manner that a notice embodying the facts found therein would be treated had such a notice been served and no action brought. Tested by such a rule it is argued that the action cannot be maintained because recovery is sought on a ground of negligence not found in the first complaint.

Subd. 5 of sec. 4222 was amended in 1899 by adding thereto the following provision:

"When an action shall be brought and a complaint actually served therein within one year after the happening of the event causing such damages, the notice herein provided for need not be served." Laws of 1899, ch. 307: Supp. 1906.

The statute just quoted was before the court for construction in *Odegard v. North Wis. L. Co.* 130 Wis. 659, 675, 110 N. W. 809, under substantially similar facts, and it was there held that

"The statute does not make it essential that the previous complaint shall allege the same grounds of negligence as that upon which the recovery is obtained, nor can we add any such requirement by construction."

It is further held in the case cited that, where an action is brought to recover damages for an injury and the complaint therein is served within one year after the date of such injury, such act is a full compliance with the statute and in fact takes the case out of the operation of the statute in so far as it relates to the service of notice of an injury. The case referred to is controlling here. The court has said that the 1899 statute means what its words plainly imply. The legislature might repeal altogether the provision of sec. 4222 requiring notice

to be given, and it likewise had the power to say that no notice need be given when an action to recover damages for an injury was begun and a complaint was served within a year after the injury occurred.

2. It is argued that the court erred in refusing to grant a nonsuit and in refusing to direct a verdict because the plaintiff failed to prove a cause of action. The plaintiff's employment in the vicinity of the saw was incidental. He was requested to draw some oil from a barrel that stood about four or five feet from the saw. Unless he found or had good reason to believe that it was necessary for him to light the gas in the jet over the saw in order to draw the oil, he had no business being where he was when he got hurt and the defendant is not liable for his injury. The appellant insists that the weather reports introduced in evidence show that the sun was shining when the injury occurred; that the greater part of the wall space on the south side of the factory consisted of windows from which the sunlight was not obstructed in any way; that there were windows in the west end of the factory; that photographs taken without the aid of artificial light show the oil barrels and other objects in their vicinity plainly and distinctly; that the plaintiff made no claim in reference to insufficient light in his original complaint; that he once stated that he was not lighting the gas when he was injured, but was screwing onto the gas jet a nipple which he found on the floor and which he thought he would put in place, and that he testified that without lighting the gas he could see the oil as it was being drawn. Because of these facts and conditions this court is asked to say as a matter of law that no sufficient reason existed for lighting the gas. On the other hand, plaintiff denied that he made the statements attributed to him about replacing the nipple, and, while he testified that he looked in the oil can and saw it was about half full before he proceeded to light the gas, he also testified several times that it was too dark to draw the oil without the light. The weather reports show that the

sun was shining nine tenths of the time during the hour in which the witnesses agree the accident happened. There were some changes in the arrangement of the machinery in the factory after the accident and before the photographs were taken and there were also some changes in the lighting space in the west wall. A large number of witnesses testified to light conditions in the part of the factory where the oil barrels were in place. Some testified that it was always dark in this vicinity; others that it was necessary to have lights on cloudy or dark days; and others that lights were needed at the time of the accident. According to the weather observations it was cloudy a part of the hour during which the injury occurred. We are unable to say that the evidence offered on behalf of the plaintiff is incredible or that it has been so thoroughly impeached as to present no issue for the consideration of the jury. The appellant argues that the evidence of witnesses that it was dark in the shop between 2 and 3 o'clock on the afternoon of November 12, 1901, when their evidence was given in June, 1910, and when there was nothing which served to direct their attention to the weather conditions at that particular time in 1901, is unbelievable. The evidence, if true, indicates that the parties giving it were gifted with remarkable memories. The plaintiff, however, had reason to know whether it was necessary for him to light the gas or not, and, while his positive evidence that it was necessary is shaken by his statement that before lighting the gas he could see into the measure in which he was drawing the oil, yet this statement does not negative the idea that the plaintiff had reasonable grounds for believing that it was necessary for him to light the gas in order to do his work, and his evidence, with such corroboration as it received, presented a jury question.

3. It is alleged in the complaint that it was so dark in the vicinity of the oil barrels that oil could not be drawn therefrom without lighting the gas. This averment is denied in the answer. It is also alleged in the complaint that the de-

fendant was negligent in failing to place a guard over the saw and in failing to warn the plaintiff of the danger from the saw to which he might be exposed in lighting the gas. It is manifest that the plaintiff had no business around the saw, which was several feet from the oil barrels, unless he deemed it necessary to light the gas, and that if there was no real or apparent necessity for doing so the master owed no duty to the plaintiff to warn him of the existence of the saw or to guard it, and that the plaintiff was injured by reason of being at a place where he had no call to go. The condition of the shop where the oil barrels stood, as to being light or dark, and whether the plaintiff had reason to believe that it was essential that the gas should be lit in order to draw the oil, was a vital question in the case.

The third question in the special verdict was as follows:

"At the time of receiving the injuries of which he complains, was the plaintiff engaged in work at a place in which he was authorized by the defendant to engage in the performance of such work?"

To this question the jury answered "Yes." The defendant requested the following instruction in reference to the fourth question, which was refused:

"Unless you find from a clear preponderance of the credible evidence that it was so dark near the oil barrel that the plaintiff could not reasonably be expected to draw oil from the barrel without artificial light, you will answer the fourth question 'Yes.'"

The defendant asked to have the following question submitted to the jury:

"2. Was the place in defendant's machine shop where oil was drawn from the oil barrels referred to in the testimony so dark at the time plaintiff was injured that artificial light was required to enable one to draw oil from such barrels?"

Was it error to refuse to submit the question or to refuse to give the instruction requested? There is no great amount of

confusion in our later cases bearing on the construction of sec. 2858, Stats. (1898). In *Rowley v. C., M. & St. P. R. Co.* 135 Wis. 208, 216, 115 N. W. 865, this court said:

"This court has several times held that where specific acts of negligence are charged by the complaint, denied by the answer, and litigated on the trial, a special verdict should contain specific questions covering these alleged acts, and that the submission of a general question simply asking whether the defendant was guilty of want of ordinary care which proximately caused the plaintiff's injury is not a compliance with the special-verdict statute and will be error, at least where the proper specific questions are requested. *Lee v. C., St. P., M. & O. R. Co.* 101 Wis. 352, 77 N. W. 714; *Bigelow v. Danielson,* 102 Wis. 470, 78 N. W. 599; *Schrunk v. St. Joseph,* 120 Wis. 223, 97 N. W. 946; *Olwell v. Skobis,* 126 Wis. 308, 105 N. W. 777. The reason is quite plain. The statute contemplates the right of the party to a separate finding of the jury upon each such specific question of fact. It is the duty of the court to administer the statute so that the result aimed at be obtained. If the court may refuse to submit such specific questions and simply submit the general question of negligence, then the statute is practically eliminated from the statute book, and in every negligence case two or three general questions covering simply ultimate conclusions of fact and law, and amounting to but little more than a general verdict, will take the place of the findings of specific fact contemplated by the statute."

In *Lee v. C., St. P., M. & O. R. Co.* 101 Wis. 352, 362, 77 N. W. 714, it is held that the special verdict should cover such physical facts as are put in issue by the pleadings. This case also approves of the rule in *Heddles v. C. & N. W. R. Co.* 74 Wis. 239, 258, 42 N. W. 237, wherein it was held that the questions in the special verdict should be limited to such facts as are controverted or put in issue by the pleadings, or at most to such as might properly have been put in issue by the pleadings.

In *Bigelow v. Danielson,* 102 Wis. 470, 472, 78 N. W. 599, the complaint alleged several distinct acts of negligence

which were denied in the answer. The following question
was submitted: "Was the injury to the plaintiff proximately
caused by defendant's negligence?" The court said that the
office of a special verdict was to single out the issuable facts
upon which the defendant's obligation rests, and that questions
should be propounded which would present to the jury the
real issues concerning which proof is offered.

In *Schrunk v. St. Joseph,* 120 Wis. 223, 228, 229, 97 N.
W. 946, an issue was raised by the pleadings as to whether the
defective condition of a highway was due to an extraordinary
condition as to water for which the defendant would not be
liable. The court said that this condition "was one of more
significance than a mere evidentiary circumstance bearing on
the question of whether the highway was reasonably safe or
not," and it was held that a question covering this issue should
have been submitted.

In *Olwell v. Skobis,* 126 Wis. 308, 318, 105 N. W. 777,
the pleadings put in issue the question as to whether the de-
fendant was doing the work which resulted in injury to the
plaintiff "in the usual safe and workmanlike manner." De-
fendant asked the court to submit a question covering this
issue, which request was denied, and the denial was held to
constitute error.

In *Lillis v. Beaver Dam W. Mills,* 142 Wis. 128, 133, 124
N. W. 1011, the complaint specified several distinct acts of
negligence which were put in issue by the answer. The ques-
tion submitted to the jury was whether the machine on which
plaintiff was injured was a reasonably safe appliance. This
court said:

"This state of the case required the court to frame a special
verdict to meet these different issues, if he determined that
there was credible evidence tending to support any of the
alleged charges of negligence. The submission of the gen-
eral question as to whether the machine was a reasonably safe
one, accompanied by instructions which do not point out in

what respect the jury must find negligence to exist to warrant an affirmative answer to such a question, renders the verdict too uncertain upon the litigated issue respecting a defect in the machine, and we cannot ascertain wherein the jury found the machine to be actually defective and unsafe."

Other cases might be cited to support the contention of the appellant, but we content ourselves with the foregoing, which cover a recent period of time.

The respondent meets these authorities by asserting (a) that the question requested dealt with a mere evidentiary matter which need not be covered by a separate question; (b) that the third question in the special verdict covers the issue; (c) that the charge of the court under the fourth question of the special verdict cured the alleged error; and (d) that both the question and the instruction were properly refused because neither was in correct form.

(a) In support of their first proposition respondent's counsel cite the following cases: *Zimmer v. Fox River Valley E. R. Co.* 118 Wis. 614, 95 N. W. 957; *Wis. F. L. Co. v. Bullard,* 119 Wis. 320, 96 N. W. 833; *Johnson v. Tucker,* 136 Wis. 505, 117 N. W. 1002; *Murphy v. Herold Co.* 137 Wis. 609, 119 N. W. 294; *Blankavag v. Badger B. & L. Co.* 136 Wis. 380, 117 N. W. 852; *Palmer v. Schultz,* 138 Wis. 455, 120 N. W. 348; *Steber v. C. & N. W. R. Co.* 139 Wis. 10, 120 N. W. 502; *Sufferling v. Heyl & Patterson,* 139 Wis. 510, 121 N. W. 251; *Maxwell v. Wellington,* 138 Wis. 607, 120 N. W. 505; *Anderson v. Sparks,* 142 Wis. 398, 125 N. W. 925. In most of these cases the question which the court refused to submit did not cover an issue of fact necessarily or properly presented by the pleadings, but related to some item of evidence or fact upon which a finding by the jury would be wholly immaterial. There is a difference between an item of evidence which tends to establish an issuable fact properly pleadable and the issuable fact itself. Many different items of evidence may bear on some material issuable fact, but a

specific finding on one or more of such items might wholly fail to settle any issue in the case that would aid in supporting whatever judgment was rendered on the verdict. These items or independent facts, which with other facts tend to prove or disprove the issues in the case, are referred to properly enough in the decided cases as evidentiary matters, although the language is apt to be misleading and to be given a broader meaning than it was intended it should be given.

Of the cases cited by respondent's counsel, *Sufferling v. Heyl & Patterson* and *Steber v. C. & N. W. R. Co.* come nearest to sustaining their position. A casual reading of the *Sufferling Case* might well lead to the conclusion that it holds that such a question as we have here need not be submitted. The rule laid down in the cases relied on by the appellant in this case is referred to and the cases supporting it are cited. It is then said that the question as to whether the master had knowledge that the hoisting apparatus was defective was put in issue by the pleadings and the counsel and the court considered it a material issue on the trial, and that therefore the court should have submitted a question bearing directly on the point. The judgment in the case, however, was affirmed. Although it does not expressly so appear, we think it is quite clear that the judgment was affirmed because this court did not consider the matter of knowledge or the lack of it to be material. The recital of some fact in a pleading, which is denied, does not require its submission to the jury unless it was necessarily or at least properly pleadable.

In the *Steber Case* the only ground of contributory negligence relied upon was that the deceased car-repairer failed to protect himself by the use of a flag, contrary to the rules of the defendant. The defendant requested that the jury be asked whether or not the deceased put up a flag. This request was refused, and the jury was asked if the deceased was guilty of any want of ordinary care which proximately caused his death. Under this general question the court instructed

the jury that the only ground of contributory negligence relied on was the failure to put up the flag, and that if it was satisfied from the evidence that the deceased did not put up the flag it must answer the question in the affirmative; otherwise it should be answered No.    This court held that the real issue was placed before the jury so clearly and concisely by the instruction that no prejudice could result to the defendant from submitting the general question coupled with the charge given.    In this case the question of whether the flag was put up was not directly raised by the pleadings.

(b) It is argued that by the third question in the special verdict and the answer thereto the jury found that the plaintiff was engaged in work in a place where he was authorized to work and that therefore it must necessarily have found that the plaintiff was justified in lighting the gas.    This argument is unsound for two reasons.    In the first place the question is as general in form as is that dealing with the duty of the defendant to warn or to furnish the plaintiff a safe place to work.    It may be said that by inference the jury found, when it answered these questions, that the place was so dark that the plaintiff had reasonable ground to believe that it was necessary for him to have a light.    But none of the questions pin the jury down so as to require it to answer the direct question involved.    The second reason is that the question was probably intended to meet the claim that the plaintiff was putting the nipple on the gas jet when he was injured.    There was nothing said by way of instruction that was calculated to advise the jury just what point the question was directed to.

(c) The fourth question in the special verdict required the jury to find whether or not the defendant furnished the plaintiff a safe place in which to work.    On this question the court charged the jury that it might consider (1) whether the place was so dark that artificial light was required to draw the oil; (2) whether the plaintiff did or did not light the gas jet over the saw; (3) whether the plaintiff was directed by the foreman to light the gas if the place was too dark to draw oil

without light; (4) that it might also consider the condition of the saw as it then stood without a guard or covering; (5) that it might consider whether the belt-shifting device on the saw was out of repair; and, finally, whether "any or all of the conditions which you shall find existed at that time rendered the place a reasonably safe place in view of all the circumstances." It is not apparent how this instruction aided in any way in curing the alleged error. The jury, by finding that any one of several conditions existed, might properly answer the question in the negative. It was admitted that the saw was neither covered nor guarded, and yet the jury was given to understand that it might answer the question as it did if it found this admitted fact to be true.

(d) The form of the question submitted is criticised, and it is subject to criticism. It asked if "artificial light was *required* to enable one to draw oil from such barrels." The proper inquiry under the facts of the case would have been whether, in view of his age, experience, and intelligence, and the instructions he had received, if any, the plaintiff had reasonable grounds for believing that on account of the darkness it was necessary for him to light the gas in order to properly perform his work. The duty of framing a special verdict, however, devolves upon the court. Its attention was sharply called to the issue which the defendant desired to have submitted, although not in exact language. Under these circumstances it was the duty of the court to frame and propound the correct question. It is so decided in *Olwell v. Skobis,* 126 Wis. 308, 105 N. W. 777.

It is apparent that no question dealing directly and specifically with the sufficiency or insufficiency of the sunlight was asked. The jury was not specifically instructed under any of the questions propounded that an answer which would be favorable to the defendant must be returned if it found as a fact that the light in the shop before the gas was lit was such that the plaintiff, circumstanced as he was, had no reasonable ground for believing that it was necessary for him to light the

gas in order to properly perform his work. It was manifestly the duty of the court to give some such instruction on its own motion, if it did not see fit to propound the question requested by the defendant. We do not think a parallel case can be found where this court has not held that reversible error was committed in the submission of the case to the jury.

The issue in regard to light having been raised by the pleadings and litigated on the trial, and presenting as it did a question vital to the right of the plaintiff to recover, and the attention of the court having been directed to the issue by the question which appellant asked to have submitted, the defendant was fairly entitled to have an appropriate question specifically covering the subject submitted to the jury. We do not hold that the court might not have instructed the jury, under either the third or the fourth question in the special verdict, in such a manner as to render the failure to submit the question requested harmless error. But it should be remembered that the statute provides how the verdict shall be framed and makes no provision for substituting a charge for a specific question, and that a jury ordinarily hears the charge of a court but once, while it has the special verdict before it all the time it is deliberating, and that the material fact must be found if the proper question is submitted, while the charge may be forgotten. Where the general question is asked and the jury is plainly told that its answer thereto must depend on what it finds some specific fact to be, as in the *Steber Case*, prejudicial error will not ordinarily follow, particularly where the verdict consists of but few questions and the charge is not lengthy. But the better and safer practice is to submit the specific question requested where it covers a material fact properly put in issue by the pleadings.

4. It is further argued that the court erred in refusing to charge the jury as follows:

"In regard to question No. 3 and all other questions in the special verdict, I charge you, gentlemen, that in considering

such question, or any question of the special verdict, you will give no weight to and pay no attention whatever to any evidence in the case as to any alleged defect in the shifter or shifting device or belt of the nipple or pipe-cutting machine. The evidence on that subject has nothing to do with the issues submitted to you and you will therefore not consider any evidence in the case having reference to any such alleged defect."

The plaintiff had a right to show that there was no one around the saw when he came in contact with it. He might naturally think that the saw was not running because it was not in use. He sought to account for the fact that it was running by offering proof to show that the saw sometimes started because the belt-shifting device was out of repair so that the belt would automatically shift onto the pulley which drove the saw. The oiler, Duma, testified that he started the saw so as to properly oil a bearing on the overhead shaft and that he was up on a ladder doing this work when the injury occurred. If this evidence was true, then any defect there might have been in the belt-shifting device had nothing whatever to do with the accident and the requested instruction should have been given. As we read the testimony we find nothing therein which really contradicts Duma's evidence, and the instruction was therefore improperly refused. We should be loath to hold that the error was prejudicial if the record were otherwise free from error. Upon substantially like evidence on another trial the instruction, if requested, should be given. The foregoing disposes of all of the questions the discussion of which we think would be helpful to the trial court on another trial.

*By the Court.*—The judgment of the circuit court is reversed, and the cause is remanded for a new trial.