SADOWSKI, Administratrix, Respondent, vs. THOMAS FUR-
NACE COMPANY, Appellant.

*November 19, 1913—June 17, 1914.*

*Master and servant: Death of servant: Unsafe working place: Con-
struction of statutes: Questions for jury: Contributory negli-
gence: Warning of danger: Special verdict: Failure to submit
material issue, when error: Excessive damages.*

1. Secs. 2394—48, 2394—49, Stats., are a part of a new system rela-
   tive to industrial accidents, by which it was intended to sub-
   stitute, in lieu of the ordinary rule requiring the master to come
   up to the standard of reasonable safety as to working place and
   conditions, the absolute duty to' make the employment and place
   of employment as safe as the nature of the employment will
   reasonably permit.
2. The ordinary rule as to construing legislation in derogation of
   the common law strictly against a purpose to change it, is not
   to be applied to efforts to create a new system for dealing with
   personal injuries to employees, but, the legislative purpose be-
   ing clear to approach the ideal of affording compensation for
   loss in substantially all cases of accidental injury to employees
   in the course of their employment, the language of the statute,.
   where open to construction, should be read liberally in favor
   of that purpose.
3. Since it would be very difficult to say, as a matter of law, when
   the physical conditions and acts requisite to satisfy the statute
   appear conclusively by the evidence, the question of the em-
   ployer's compliance with the statutory duty must usually be
   for the jury.
4. Where a fact which is a legitimate basic ground of a cause of
   action or defense is, specifically or inferentially, plainly pleaded
   and denied, or is raised on the trial by evidence and enters into
   the case to all intents and purposes the same as if pleaded, such
   fact is not evidentiary merely, but a fact in issue, and upon
   proper request should be submitted to the jury by an appro-
   priate question in the special verdict; and denial of such a re-
   quest is error. So *held*, where an allegation that defendant
   failed to warn plaintiff's intestate of the dangers of his work-
   ing place was denied in the answer and there was evidence that
   the deceased had been warned of the danger and ordered not to
   work in the dangerous place.
5. Failure to submit a material issue of fact on request may some-
   times be cured by instructions, but a request for submission of

a question covering a vital matter, and refusal thereof duly excepted to, will support an assignment of error for want of sufficient instructions, where those given do not cover the subject.

6. Where the earning power of deceased, who was thirty-two years of age and left surviving him a wife and three small children, was about $425 a year, damages in excess of $5,000 for his death would be regarded as excessive. SIEBECKER, J., dissents.

APPEAL from a judgment of the circuit court for Milwaukee county: .W. J. TURNER, Circuit Judge. *Reversed.*

Action by the personal representative of John Sadowski, deceased, to recover compensation for his death.

The deceased, while in the employ of the defendant, came to his end by a large quantity of iron ore, compacted by freezing into a hard mass, rolling down from the top of a bank, at the foot of which he was working. His duties required him to assist in transferring iron ore from a large mound thereof by wheeled vehicles to a furnace. The mound was around twenty feet high. The operation of removing ore therefrom included filling the conveying appliances at the foot thereof. It resulted in there being a bank sloping from where loading operations were conducted back some ten or twelve feet and angling upward to the crust which had formed by freezing. It was necessary in order to render the working place safe for the crust to be kept broken down. There was a crew for that particular work. They did not blast at the crust which caused the accident because of being short of blasting material. Plaintiff knew the danger incident to an overhanging crust of ore in case of his being engaged at the foot of the bank. From his working place the conditions as to overhang, necessarily, came frequently under his observation, and could be seen any instant by any effort to do so. There was no difficulty in that regard from want of light. The operation of taking ore from the foot of the bank proceeded at the rate of some sixteen tons per hour. The men ordinarily chose their own particular place and did

so on the occasion in question. They, ordinarily, had to change their location according to operations of the crew above. Such crew on the particular day, worked with sledges, and by drilling holes and driving in wedges. The crust did not yield to their efforts and was abandoned before the accident. There was considerable overhang, plainly observable some time before the instant of the accident. The deceased had been admonished to look out for the danger, but chose to continue his work at the particular place. There was evidence to the effect that he was ordered not to work under the overhanging crust and declined to obey, saying he would watch out for himself. The crust broke some distance further back than the point where the crew above had made efforts to dislodge it. The deceased was working at the time close up to the bank and as near the overhang as practicable.

The negligence claimed and found by the jury was: 1. Failure to furnish a working place as free from danger as the nature of the employment would reasonably permit. 2. Failure to adopt and use means reasonably adequate to render the employment and place of employment safe. The jury found that such failure proximately caused the accident without contributory negligence of co-employees or the deceased. There was a specific allegation in the complaint of failure to warn deceased of the dangers of his working place, a denial of such allegation, a request to submit that specific issue to the jury, and refusal thereof. There was also a request for submission of whether the deceased was not ordered to cease working in the place of danger and move to another and safe place pointed out and that he declined to do so. The testimony on the subject of damages was to the effect that deceased was thirty-two years old, was a common laborer, capable, in general, of earning $1.75 per day, had been married some eleven years, and not been able to accumulate much of anything or to earn more than what was necessary to sup-

port his family, consisting of his wife and three children, aged four, six, and nine years, respectively. The jury found as follows: Defendant did not furnish deceased a place of employment as free from danger to life and safety as the nature of the employment would reasonably permit, nor adopt and use methods and processes reasonably adequate to render the employment and place of employment of deceased safe. Such faults were the proximate cause of the death of the deceased without contributory want of ordinary care of co-employees or himself. The damage to the widow is $7,500. Judgment was rendered in plaintiff's favor on the verdict, exceptions being duly saved essential to the questions discussed in the opinion.

For the appellant there were briefs by *Doe & Ballhorn,* and oral argument by *J. B. Doe.* To the point that the court erred in refusing to submit the questions as to whether or not deceased was warned against working at the place where he was injured, they cited *Heddles v. C. & N. W. R. Co.* 74 Wis. 239, 258, 42 N. W. 237; *Lee v. C., St. P., M. & O. R. Co.* 101 Wis. 352, 77 N. W. 714; *Wawrzyniakowski v. Hoffman & B. M. Co.* 146 Wis. 153, 131 N. W. 429; *Rowley v. C., M. & St. P. R. Co.* 135 Wis. 208, 115 N. W. 865.

For the respondent there was a brief by *John C. Kleczka* and *Glicksman, Gold & Corrigan,* and oral argument by *Mr. Kleczka* and *Mr. W. L. Gold.*

The following opinion was filed March 17, 1914:

MARSHALL, J. Questions raised by appellant's counsel and not mentioned in this opinion, are to be regarded as having been passed as not of sufficient consequence to merit a place in the record of this case.

The faults which the jury found defendant guilty of, resulting in decedent's death, were failure to perform the statutory duties of an employer to furnish his employee a place of employment "as free from dangers to life and safety as the

nature of the employment would reasonably permit" and "adopt and use methods and processes reasonably adequate to render the employment and place of employment of the deceased safe." Those requisites are found in secs. 2394—48 and 2394—49, Stats. They are a part of the new system in relation to industrial accidents adopted by chs. 485 and 664, Laws of 1911, whereby the common defenses of assumption of risk and negligence of fellow-servants were abolished, employers, with some exceptions, were given the option to surrender the right to the defense of contributory negligence and submit to liability, according to legislative standards, practicably on a basis of insurance, for all losses to employees and their immediate dependents specified, caused by personal injuries, not self-inflicted, happening in their line of employment, and the standard of care to be exercised by employers as to safety of employment, safety of working place, and protection against danger, both as to the employment and the working place during working operations, was particularly prescribed, and the industrial commission was empowered to supervise employments and places of employment and make and enforce orders and regulations needed, or appropriate, to enforce the statutory duties of employers.

Thus the whole field wherein employees in the course of their employment may be injured, was covered,—common-law standards of compensation, recoverable in the common-law way, being left undisturbed as to any employer not coming under the new system so as to waive the defense of contributory negligence,—the absolute duty was created of accomplishing physical results for prevention of industrial accidents, and the industrial commission was empowered with authority to supervise and coerce as to performance of such duties. The legislative purpose is manifest. The language creating the duties mentioned is broad, general, and in unmistakable words of positive command.

Counsel for appellant contend that the trial court dealt

with the cause upon a wrong theory; that the legislative re-
quirements aforesaid, standing alone, do not add to the com-
mon-law standard of care, and that they have little or no
vitality until the industrial commission acts under its super-
visory authority and prescribes what shall and what shall not
be done to satisfy them; but it seems to follow from what has
preceded that they are wrong.    The legislature, quite clearly,
intended to substitute for the ordinary rule requiring the
master to come up to the standard of reasonable safety as to
working place and working conditions,—often tested by the
customary practice under the same or similar circumstances,
and efficiency as to all dangers reasonably to be apprehended
from the viewpoint of ordinary care,—the absolute duty to
make the employment and place of employment of employees,
not reasonably safe merely, but as safe as the nature of the
employment will reasonably permit.    In the plainest of man-
datory language that was done by sec. 2394—41, sub. 11,
defining the words "safe" and "safety" in connection with
sec. 2394—48, followed in like mandatory language by sec.
2394—49, creating the duty of the master to not permit an
employee to submit himself to any of the dangers designed to
be guarded against; and in like mandatory language creating
the duty of the employer to "provide and use safety devices
and safeguards" and not to fail to "adopt and use methods
and processes reasonably adequate to render the employment
and place of employment" "as safe as the nature" thereof
"will reasonably permit," and not "to fail or neglect to do
every other thing reasonably necessary to protect life, health,
safety or welfare of employees" and not to "occupy or main-
tain any place of employment" that is "not as safe as the
nature of the employment will reasonably permit."

There is little use in enlarging on the plain words of the
statute.    They must be taken as meaning just what they ex-
press, no attempt being made to minimize in favor of em-
ployers because of the heavy burdens, seemingly, by the lit-

eral sense of words, cast on them. The language in such sense, is not ambiguous under the circumstances characterizing its use. From the viewpoint of modern conditions, modern needs, and modern conceptions of moral obligations to those engaged as employees in supplying the necessary and legitimate requirements of mankind, and that subjects produced to that end necessarily embody the personal injury losses incident thereto, so that the hand of the employer, in repairing such a loss, is but a link in a chain reaching from the field of production in which it accrued to and terminating with that of consumption,—all cast of unreasonable burden upon employers vanishes and there arises that of legislative recognition of serious faults in the old system, endeavor, as fully as practicable, to remedy them, and intent that efforts in that regard shall be taken as broadly as the language used to express them will reasonably permit and is appropriate to carry out the beneficent purpose. The court has spoken several times before on this subject and endeavored to make it plain that the common rule as to construing legislation in derogation of the common law strictly against a purpose to change it has little or no application to the efforts to create a new system for dealing with personal injuries to employees. History leaves no fair room for doubt as to the purpose being to approach the ideal of affording compensation for loss in substantially all cases of accidental injury to employees in the course of their employment. Therefore the legislative language, where open to construction, should be read liberally in favor of that purpose. *Koepp v. Nat. E. & S. Co.* 151 Wis. 302, 139 N. W. 179; *Kosidowski v. Milwaukee,* 152 Wis. 223, 139 N. W. 187. The progressive tendency in that regard appears strikingly significant by the change in 1913 of the Statutes of 1911 so as to abolish the defense of contributory negligence in cases of this sort.

So whether there was evidence to carry the questions submitted to the jury in the language of the statute as to alleged

fault of respondent cannot be tested merely by what was rea-
sonably necessary to the safety of decedent's working place,
and his immunity from danger of harm in the course of his
operations, nor the essential under common-law rules of a
reasonably safe working place, nor by any other standard
than that of the statute.   By that standard there was ample
evidence to go to the jury as to responsible fault of appellant.
It would be very difficult to say, as matter of law, when the
physical conditions and acts requisite to fully satisfy the
statutory requirements appear conclusively by evidence.   The
legislature evidently endeavored to remove the question as ex-
clusively as practicable into the field of jury interference.
It left the field for the court far too narrow to include this
case.   To demonstrate that we need not refer to the evidence
in detail.   Its general character, indicated in the statement,
is sufficient.   Indeed, we understand from counsel's argu-
ment they do not really claim there was not evidence to carry
the questions submitted as to fault of defendant, to the jury,
if the statutory duties we have discussed apply; and of that
we have no doubt.

One of the efficient violations of duty charged by respond-
ent and denied by appellant, is failure to warn decedent of
the danger which resulted in his death.   The evidence was
directed to that point as one vital to respondent's right to re-
cover.   Appellant's counsel by several requests for submis-
sion of questions in the special verdict—including one as to
whether decedent was not specifically ordered not to work at
the particular place, but go to another specified, where there
was no overhang of frozen ore—efficiently challenged the
court's attention to this important phase of the case.   The
requests were not only refused but the instruction on the sub-
ject of contributory negligence did not cure the omission.

It is no answer to the contention of appellant's counsel to
say that whether there was efficient fault on respondent's part
in failure, as alleged, to warn, is mere evidentiary matter

bearing on safety of place of employment, safeguarding there-
of and of employees during performance of their labor, and
contributory negligence. No fact is merely evidentiary
which is a legitimate basic ground of a cause of action or de-
fense, and is properly pleadable as such. When such a fact
is specifically or inferentially plainly pleaded and denied by
answer, or is raised on the trial by evidence and enters into
the case to all intents and purposes the same as if pleaded, it
is neither in the nature of a conclusion of law or mixed law
and fact, or merely evidentiary matter; but is a "fact" within
the meaning of sec. 2857, Stats. 1911, providing that a spe-
cial verdict is one "where the jury find the facts only, leaving
the judgment to the court," and the issue in respect thereto
one of the "material issues of fact," to be established by evi-
dence and required under sec. 2858, Stats. 1911, to be sub-
mitted to the jury in the form of a question in such form as
to admit "of a direct answer." All such facts, as distin-
guished from mere conflicts in evidence, and only such, are
to be so submitted. The statute, in very plain language, re-
quires that and practically prohibits such submission of any
other matter, and this court has thus dealt with the statute so
many times as to leave little or no room for excuse for not
following its command.

Upon counsel making a proper demand for a special ver-
dict he secures for his client the benefits of a statutory right.
Judicial conservation of that right, by carefully following the
requirements of the statute in framing the verdict so as to in-
clude therein all which should be included, and exclude all
which should be excluded, submitting a question, covering in
concise plain language, admitting of a direct answer for each
issue of fact raised by the pleading and controverted by the
evidence, or pleadable and properly raised by evidence, and
guarding carefully against double questions and questions
calculated to invite inconsistent answers,—will make the spe-
cial-verdict law the valuable instrumentality the framers of

the Code designed it to be.   Like many features of the written as well as of the unwritten law, most of the difficulties attending its application are faults of administration which may easily be remedied by courts, instead of fault in the law.

.What has been said as to the nature of a special verdict and the importance of care in according the statutory right, not adding thereto nor taking therefrom, is but a reiteration of what has been said many times before, but seems appropriate to be repeated occasionally, to the end that justice may not miscarry by failure to comply with the plainly judicially expounded statute.   The decisions of this court on the subject have been so numerous that reference to them now is deemed unnecessary and inadvisable.

True, in a broad sense, the question of safe working place, and efficient conservation of safety during working operations, includes the subject of warning against dangers, and notice not to work in a dangerous place as, also, the subject of contributory negligence; but, nevertheless, failure to warn being pleaded, as in this case, as a substantive ground of liability, it is a fact in issue rather than mere evidentiary matter. Therefore, it was plain error not to submit a question on the subject.   *Sufferling v. Heyl & Patterson,* 139 Wis. 510, 516, 121 N. W. 251; *Harper v. Holcomb,* 146 Wis. 183, 194, 130 N. W. 1128; *Szewczyk v. E. W. Ellis L. Co.* 146 Wis. 452, 459, 131 N. W. 977; *Wawrzyniakowski v. Hoffman & B. Mfg. Co.* 146 Wis. 153, 162, 131 N. W. 429.

While failure to submit a question covering some particular material issue of fact may sometimes be cured by instructions, the better practice is to follow the statute strictly, *Wawrzyniakowski v. Hoffman & B. Mfg. Co., supra;* but where the difficulty is not thus obviated the error is of serious nature.   That here falls within such class.   There was a refusal to submit the question of warning, notwithstanding evidence tending to prove that decedent was ordered to cease working in the place of danger and go to another, pointed out as free from peril; and the jury were so instructed on the

questions of contributory negligence as to suggest that all testified to as to admonishment of the decedent might be true, and yet he not have been guilty of contributory negligence.

It may be that, since it was appellant's duty not to permit decedent to work in a place not as free from danger as the nature of the employment would permit, he might have been merely warned against the peril which he was in and yet not have been guilty of contributory negligence, as matter of law, in continuing his work. In that respect the common-law rule, recognized in many cases, in view of the statutory duty of the defendant to go further than to merely warn of danger,—to go to the extent of warning of such emphatic character as to take the cast of prohibiting continuance in the place of danger, would not necessarily govern. But a warning of such emphatic character as the one testified to and neglect to heed it would involve efficient contributory fault. So there was no way the court could have rendered failure to submit the question under discussion harmless, except to have plainly instructed the jury that if the decedent was admonished to cease operations in the dangerous place he was guilty of contributory negligence as a matter of law.

It has been suggested that the instruction referred to was not excepted to, as not sufficiently specific, and that no further instructions were asked, also that failure to prohibit the deceased from working in the place of danger was not a matter in issue under the pleadings. The answer to that is that the pleaded facts, as to want of safe working place and failure to warn, by reasonable, if, not necessary, inference covered failure to warn of danger to the statutory extent, and the request to submit the question as to whether the decedent was ordered not to continue at work in the dangerous place was sufficient to challenge attention of the court to the fact that, if such circumstance occurred, deceased was guilty of contributory negligence as matter of law and require an instruction to that effect or submission of the question.

A request for submission of a question covering a vital

matter and refusal duly excepted to, furnish good ground for complaining of want of sufficient instructions, where those given do not cover the subject.    *Crouse v. C. & N. W. R. Co.* 104 Wis. 473, 480, 80 N. W. 752.

From the foregoing it will be seen that the refusal to submit the questions as to warning, particularly the one as to the decedent having been ordered to cease working in the place of danger, was prejudicial error for which the judgment must be reversed.

The further complaint is made that the damages assessed are excessive.    That needs attention to aid in closing the litigation without necessity for again appealing.    The recovery could not properly exceed the amount of the pecuniary loss to the widow.    That must be measured by the present worth of such portion of what decedent would probably have earned had he lived his expectancy of life, as would, with reasonable certainty, have inured to her.    On that basis, there does not seem to be good reason for awarding respondent the sum of $7,500.    The earning power of decedent was around $425 per year.    He was thirty-two years of age.    His expectancy of life was around thirty-three years.    His earning power, on the average, for that period could not fairly be taken at more than $350 per year nor more than $200 beside the necessary outlay for himself.    So the limit of pecuniary loss to her was $200 per year during his expectancy of life. It might be much less.    Reduced to a reasonable certainty, doubtless the $200 would need to be substantially diminished. Four thousand dollars would purchase an annuity for the widow of $200 per year.

Therefore it seems reasonably certain a jury on the evidence before us might place the recovery as low as $4,000. If the cause were to be remanded with permission to take judgment and avoid a new trial it could not be for more than $4,000.    Since it must go back for a new trial there will be opportunity for a second jury verdict, but as a guide to

speedy, final determination, it is considered best to say that a recovery on evidence similar to that now here of more than $5,000 would be fatally excessive.

*By the Court.*—The judgment is reversed, and the cause remanded for a new trial.

KERWIN and TIMLIN, JJ., dissent.

SIEBECKER, J.   I concur in the reversal of the case and the ordering of a new trial, but I do not concur in the direction that more than $5,000 would be fatally excessive as damages.

A motion for a rehearing was denied, with $25 costs, on June 17, 1914.