BAKER, Respondent, vs. JANESVILLE TRACTION COMPANY
and another, imp., Appellants. [Two appeals.]

*December 8, 1930—May 12, 1931.*

For the appellants there was a brief by *Schubring, Ryan, Clarke & Petersen* of Madison, attorneys for the Wisconsin Power & Light Company, and *Nolan, Dougherty, Grubb & Ryan* of Janesville, attorneys for the Janesville Traction Company, and oral argument by *Wm. Ryan* of Madison.

454

▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆

▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆

*W. B. Rubin* and *Herman A. Mosher,* both of Milwaukee, for the respondent.

The following opinion was filed February 10, 1931:

FAIRCHILD, J. The principal question raised by the demurrer is one of pleading. The safe-place statute (sec. 101.06) has been considered, analyzed, and upheld in a number of cases. Cases cited in Wis. Anno. Stats. 1930, p. 650 *et seq.* The question here is whether or not the allegations of the complaint show that the defendant has violated a duty placed upon it by the statute which requires a place of employment to be safe and the employer to adopt and use such methods as are reasonably adequate to render the employment and place of employment safe. A mere general allegation that a place is unsafe without averment stating in what respect the place was unsafe, is a mere conclusion of law and insufficient as a matter of pleading to raise the issue. *Emond v. Kimberly-Clark Co.* 159 Wis. 83, 149 N. W. 760; *Peake v. Buell,* 90 Wis. 508, 63 N. W. 1053. In this case the pleader quite evidently realized the necessity of such averments being made, the allegation in that respect being, "and that notwithstanding said defendant street-car company failed to provide plaintiff at that terminal with a reasonably safe place of employment, which could have been done by the creating of a safety zone excluding automobiles from traveling over same while plaintiff was about his work on the street for the change of trolleys, and further failed to provide him with some one then and there to be stationed to watch and warn him, while thus engaged, of the approach and passing of automobiles, and further failed to provide other adequate means or devices for safeguarding plaintiff."

It is apparent from a careful survey of the situation that a street railway using the public streets cannot station watchmen at every place where danger may be in the form of a

swiftly passing automobile, or supply barriers or other agencies for innumerable points where by accident or design trolley contacts are broken and remade. The term "safe" or "safety" means such freedom from danger to life, health, safety, or welfare of the employees as the nature of the employment and place of employment will reasonably permit.

In the case of *Miller v. Paine Lumber Co.* 202 Wis. 77, 227 N. W. 933, 230 N. W. 702, the duty to provide means of warning the employee existed because the employee there, in order to perform his work, was necessarily so engaged that it was impossible for him to see obstructions and points of interference that made a likelihood of his being injured great enough to reasonably require such protection to render the employment safe. Here the employee, at the time of his injury, was to a very large extent making his own place of employment. He was free to act for himself and was as safe as any other user of the street. He was not engaged in an occupation which required such constant attention as to prevent him from noticing his surroundings, nor was he placed in such a situation by reason of his occupation as to make it difficult for him to see all that was going on about him, nor did the pursuit of his work take from him the ability to move about freely. In fact he was in full control of his own movements with all the opportunity for observation of which any member of the public could avail himself. To require a street-car company to protect its employees under such circumstances by stationing watchmen and guards would multiply the risks and hazards of the employment rather than diminish them.

It is also apparent from the allegations of the complaint that at the place in question the defendant had no control over the street and no right to place any obstructions therein. *Downs v. Northern States Power Co.* 200 Wis. 401, 228 N. W. 471. So that in the consideration of the allega-

tions of the complaint it appears that a failure of the defendant to perform its duty is not sufficiently alleged to create an issue. Certainly the framers of the statute did not intend that questions of this kind were to be submitted to a jury so that they might speculate upon possible or fanciful means of creating a place of safety, but, on the contrary, that those who allege a violation of the statute must show in what respect the person charged has failed to perform his duty. *Hahn v. Rothstein,* 174 Wis. 381, 182 N. W. 983.

There appears to us to be another difficulty. After describing the place where the accident occurred, the complaint continues:

"That the plaintiff had just pulled down the trolley which was used while the street car was traveling north and was about midway between the rear and front end of the street car, and on his way to re-enter the street car at the end where the door was left open for and while in the actual discharge of a passenger, through the lane, when defendant Tormey drove his automobile north through that lane at such an unusually rapid rate of speed, and in excess of forty miles an hour, as to place plaintiff in immediate danger of injury, and the plaintiff, in order to escape said injury, hastily jumped to the east and behind the parked automobile, and at the very time and place, and immediately behind defendant Tormey, defendant Tegt, also driving his automobile north at an unusually rapid rate of speed, and in excess of forty-five miles an hour, and by reason thereof he being unable to stop his automobile, to avoid a collision with defendant Tormey's automobile, notwithstanding both defendants Tormey and Tegt had a clear view of plaintiff for a sufficient length preceding their approaching the lane, in which to stop, swerved his automobile to the east of defendant Tormey's car and crushed plaintiff against the parked car, causing him the injuries hereinafter alleged."

Here are allegations which show that the plaintiff's injuries were proximately caused by the reckless and unlawful conduct of the defendants Tormey and Tegt. If the defendants Tormey and Tegt were placed under no restraint

by the terms of a positive statute, the complaint certainly points out no "methods and processes" which would have served effectually to protect plaintiff. Plaintiff's injuries in this case were not caused by any failure of the defendant to perform its duty under the statute, but were immediately and proximately caused by the unlawful acts of the other defendants, according to the allegations of the complaint. The statute does not require an employer to protect his employee against wilful, unlawful, or even negligent, acts of others. *Wood v. General Railway Signal Co.* 161 Wis. 71, 151 N. W. 269. It relates to the premises and the conduct of the business of the employer and to the control of those methods and processes which are used in the employer's business over which he has a right of control and does not make the employer liable for the unlawful acts of third persons over whom he has no control or right of control.

*By the Court.*—Order of the circuit court reversed, and the cause remanded for further proceedings according to law.

The following opinion was filed February 13, 1931:

FRITZ, J. (*dissenting*). The following allegations in the complaint must be deemed admitted by appellants' demurrer, to wit:

"That along Milton avenue, and in the center thereof, the defendant street-car company maintained a street-car track over which it ran its street cars. That at the said city limits the street-car track terminated and was known as the terminal. That the street-car track was of such dimensions and the street cars used thereon were of such size and width that when one of said street cars was on the track at the place above mentioned and an automobile was parked on the east side of the street near the curb as automobiles usually and ordinarily are parked, the *space remaining* between the street car and the parked automobile *became a lane so narrow that in the passing of an automobile* through that lane (be-

tween the parked automobile and the street car) *there was left no reasonably safe room* for a person to be then and there on the street, either between the parked automobile and a passing automobile or between the street car and a passing automobile."

"That at said terminal it was necessary for the plaintiff, and made part of his duty in the process of operation of said street car, to withdraw from contact with the overhead wire that trolley used when the street car traveled north and connect therewith the other trolley for its expectant journey south. That the street car was a closed car and so constructed that in order to change trolleys it became *necessary for plaintiff to get off the street car and on to the street and pavement* and go to the south end of the street car and remove the trolley then used *and then proceed on the street* and pavement to the north end of the street car . . . and to put the other trolley in contact with the overhead wire or *vice versa.*"

That prior to plaintiff's injury his employer knew that such parking of automobiles at that terminal caused—

"the space between the parked cars and the street car to become a narrow lane and a *dangerous and unsafe place of employment and the cause of injuries* from automobiles *to street-car employees while being obliged to use the street* for the taking off and putting on of street-car trolleys, and that notwithstanding said defendant street-car company *failed to provide plaintiff* at that terminal *with a reasonably safe place of employment; which could have been done by the creating of a safety zone* excluding automobiles from traveling over same while plaintiff was about his work on the street for the change of trolleys, and further *failed to provide him with some one then and there to be stationed to watch and warn him, while thus engaged,* of the approach and passing of automobiles, and further *failed to provide other adequate means or devices for safeguarding plaintiff.*"

That when plaintiff was injured, *"the lane* between the street car then in charge of plaintiff and the automobile *was so narrow that* any automobile going north and passing through that lane *left no reasonably safe place of employment* on that street between the automobile traveling north, the street car, and the parked automobile. That the plaintiff

had just pulled down the trolley which was used while the street car was traveling north ·and *was about midway between the rear and front end of the street car, and on his way to re-enter* the street car· at the end *where the door was left open* . . . through the lane."

That his employer's failure (a) to furnish plaintiff with a safe place of employment, (b) to adopt and use methods and processes such as a safety zone, which would have rendered the place reasonably safe for employment, (c) to keep the defendant automobile drivers, Tegt and Tormey, by means of warnings and barriers, out of the place where plaintiff was at the time of injury, during his necessary employment therein, (d) to warn plaintiff in due time of the approach of Tegt's and Tormey's automobiles so as to have enabled him to reach a place of safety, and (e) to provide other adequate means or devices for safeguarding the plaintiff, proximately caused his injuries.

The sole question on this appeal is whether the facts thus alleged disclosed physical conditions and lack of methods and safeguards at that terminal, because of which a jury could reasonably find that, when plaintiff was injured, his employment or place of employment was not as safe as the nature thereof reasonably permitted, as required by sec. 101.06, Stats. It seems to me that those allegations effectively negative that plaintiff's employment, and that terminal as a place of employment, were as safe as the nature thereof reasonably permitted, and that, consequently, the complaint charges a breach of statutory duty. *Murphy v. Interlake Pulp & Paper Co.* 156 Wis. 9, 145 N. W. 193. At all events, in the face of those allegations it cannot be said as a matter of law that the employer has fully satisfied the statutory requirements. Shortly after the enactment of sec. 101.06, Stats., this court said:

"It would be very difficult to say, as matter of law, when the physical conditions and acts requisite to fully satisfy the statutory requirements appear conclusively by evidence.

The legislature evidently endeavored to remove the question as exclusively as practicable into the field of jury interference. It left the field for the court far too narrow to include this case." *Sadowski v. Thomas Furnace Co.* 157 Wis. 443, 146 N. W. 770.

That legislative policy was duly recognized in subsequent cases. *Van de Zande v. Chicago & N. W. R. Co.* 168 Wis. 628, 170 N. W. 259; *Murphy v. Interlake Pulp & Paper Co.* 162 Wis. 139, 155 N. W. 925. In the *Van de Zande Case* Mr. Justice ESCHWEILER said:

"In view, however, of the rapid changes and improvements in safety of place, process and methods of employment in the industrial world constantly going on and seemingly in almost geometrical rather than arithmetical progression, and of the imperative language of the legislature, we do not feel that we can say that the situation here is one within the domain in which the court must pronounce the final yea or nay as a question of law, rather than one within the province of the jury."

Likewise, it must be noted that the statutory duty imposed by sec. 101.06 upon the employer is of an absolute nature. *Rosholt v. Worden-Allen Co.* 155 Wis. 168, 175, 144 N. W. 650. In determining whether liability exists for breach on his part, no question of negligence or foreseeability is involved. *Olson v. Whitney Bros. Co.* 160 Wis. 606, 150 N. W. 959. The regulation applies as well to a place where the employment is carried on "but temporarily as well as to the place of continuous or permanent employment." *Van de Zande v. Chicago & N. W. R. Co., supra,* p. 630. It requires not only that the place of employment shall be safe for employees, but that the employment itself shall be safe, and that the employer shall adopt and use methods and processes not only reasonably adequate to render the place of employment safe, but also reasonably adequate to render the employment safe. *Miller v. Paine*

*Lumber Co.* 202 Wis. 77, 227 N. W. 933, 230 N. W. 702. In that case this court but recently said:

"A moment's reflection will indicate that a safe employment may require something besides a place of employment that is safe in a physical sense. To illustrate, it is not inconceivable that to render safe the employment of a track repairer in switching yards may require a warning of the approach of switching engines and cars. This has no relation to the physical conditions under which he is working but may be absolutely necessary to make his employment safe. . . . Illustrations such as this could be multiplied to indicate that under myriad situations safe employment calls for something in addition to a safe place of employment in a physical sense."

So in the case at bar, the complaint alleges facts and conditions because of which there devolved upon plaintiff's employer the duty to furnish employment, as well as a place of employment, which was reasonably safe as to methods and safeguards as well as in a physical sense; and the complaint alleges that the employer failed to perform that duty, and that that failure caused plaintiff's injury.

If, as was held in *Van de Zande v. Chicago & N. W. R. Co., supra,* the furnishing of some special means to an undersized section hand for alighting from a box car to the ground—while engaged in the ordinary operation of unloading ties, which required him to frequently get in and out of such car—was within the field of the employer's duty prescribed by the statute; or if, as was suggested in *Miller v. Paine Lumber Co., supra,* "to render safe the employment of a track repairer in switching yards may require a warning of the approach of switching engines and cars," then why is not an employee, who is obliged at regularly recurring intervals to work in the midst of equally dangerous traffic conditions at a particular and definite place on a public highway, likewise entitled to the protection prescribed by secs. 101.06 and 101.01 (11), Stats.?

We are not now concerned with an unavoidable stop at an unexpected and unusual place for stopping, and a motorman's stepping into the street at that place merely to reset a trolley wheel which had unexpectedly left the overhead wire. If, as is alleged in the complaint, plaintiff's employment necessitated walking, at regularly recurring intervals, at a certain place, through a lane which, to the knowledge of his employer, by reason of the frequent parking of automobiles at the curb and the rapid passing of automobiles between the street car and such parked automobiles through that lane, was so narrow that there was not sufficient room for him to walk there safely, and that lane became a dangerous and unsafe place of employment, then why is it not within the province of a jury to find that the employer's failure to "provide plaintiff at that terminal with a reasonably safe place of employment, which could have been done by the creating of a safety zone," or that its failure to provide a warning signal, or barrier, or other adequate means or devices for safeguarding plaintiff, constituted a failure on the part of the employer to sufficiently comply with sec. 101.06, Stats.? There is no exception in that statute which relieves an employer from providing adequate safeguards, or which absolves him from his responsibilities under the safeplace statute, when a place in a public highway happens also to be the place of employment for his employees. No exception in the statute imposes upon an employee working in a public highway, continuously or at regularly recurring intervals, at a customary place under hazards which can be avoided by his employer, the burden of working there at his own risk. Humane considerations and common sense suggest that if operations which an employer is lawfully authorized to engage in on public highways, at fixed locations, are, in the absence of adequate safeguards, dangerous to his employees, then the employer's authority to carry on such opera-

tions on the highway necessarily includes the right to fully perform his duty to safeguard his employees. If, however, in such public places as are necessarily used by an employer for extended periods, or customarily, on regularly recurring occasions, to carry on his operations, express governmental permission is necessary to authorize him to provide safety zones or to use safeguards or methods reasonably adequate to render such employment at such places or such places of employment safe for employees, then such permission should be obtained, and such safeguards or methods should be provided by the employer, before his employees are subjected to any hazard which the employer can avoid. Until that has been done, it is within the province of a jury, under facts and circumstances similar to those alleged in this case, to find that the employer has failed to sufficiently comply with the safe-employment and safe-place statutes; and he may be liable to his employees for injuries sustained by them as the result of such failure.

Consequently, I do not concur in the conclusion that the complaint does not state facts sufficient to constitute a cause of action against plaintiff's employer. In my opinion, the learned circuit judge rightly overruled appellants' demurrer to the complaint.

A motion for a rehearing was denied, without costs, on May 12, 1931.