Powless, Appellant, v. Milwaukee County and another, Respondents.

*December 3, 1958—January 2, 1959.*

For the appellant there were briefs by *Whyte, Hirschboeck, Minahan, Harding & Harland* of Milwaukee, and oral argument by *Victor M. Harding.*

For the respondents there was a brief by *Moore & Moore* of Milwaukee, and oral argument by *Raymond J. Moore* and *Gary E. Moore.*

MARTIN, C. J.   The statutes involved, so far as material, read:

Sec. 101.01 (11) "The term 'safe' or 'safety' as applied to an employment or a place of employment or a public building, shall mean such freedom from danger to the life, health, safety, or welfare of employees or frequenters, or the public, . . . as the nature of the employment, place of employment, or public building, will reasonably permit."

Sec. 101.06 "Every employer shall furnish employment which shall be safe for the employees therein and shall furnish a place of employment which shall be safe for employees therein and for frequenters thereof and shall furnish and use safety devices and safeguards, and shall adopt and use methods and processes reasonably adequate to render such

employment and places of employment safe, and shall do every other thing reasonably necessary to protect the life, health, safety, and welfare of such employees and frequenters. Every employer and every owner of a place of employment or a public building now or hereafter constructed shall so construct, repair, or maintain such place of employment or public building, and every architect shall so prepare the plans for the construction of such place of employment or public building, as to render the same safe."

With respect to whether or not the defendants have so constructed and maintained the stadium premises as to comply with the statute, it should be kept in mind that this is a sports arena used for baseball, and it should be as safe as a structure used for baseball purposes reasonably can be. The trial court held that defendants had complied with the safe-place statute.

It is undisputed that the backstop screen affords complete protection to those seated behind and under it against the danger of being hit by foul balls. It is likewise undisputed that, from a structural or engineering standpoint, the same or similar type of screening could be extended the entire length of the lower grandstand. The evidence further showed that no other major-league stadium provides a screen or netting all around the playing field, and that the position and size of the backstop in the Milwaukee county stadium comply with the standards and customs of all major-league baseball parks.

The requirements of the safe-place statute do not make an owner of a public building an insurer of the safety of his premises. *Sykes v. Bensinger Recreation Corp.* (7th Cir. 1941), 117 Fed. (2d) 964. As pointed out in that case, the owner's duty under the statute to provide a safe place for frequenters is an absolute one, but the term "safe" is relative, not absolute, and what is a safe place depends on the facts and conditions of each case. As provided in the statute itself,

the duty is to provide a place which is as safe *as the nature of the public building will reasonably permit.*

Defendants cite a number of cases from other jurisdictions holding, in effect, that there is no duty on the part of the owners or operators of baseball parks to provide safeguards against foul balls for spectators other than those seated immediately behind home plate. These cases are not helpful since they come from states where there is no safe-place statute; the question involved was one of common-law negligence.

The defendants admit that foul balls are known to fly into the unscreened areas of the grandstand and the evidence shows that during the 1953 season 50 spectators were injured by foul balls, 14 during the 1954 season up to and including the time that plaintiff was hit. The attendance at the stadium during each of those seasons was approximately 2,000,000 paid admissions.

Plaintiff argues that if all the spectators in the stands were employees, the erection of a protective screen between them and flying objects incident to the employment would doubtless be required for compliance with the statute. As pointed out in *Miller v. Paine Lumber Co.* (1929), 202 Wis. 77, 227 N. W. 933, 230 N. W. 702, an employee occupied with the performance of his work might not be able to see or anticipate certain obstructions or interferences likely to injure him. But what we have here is not an employment situation. In this case the nature of the stadium is not that of a place of employment and the spectators are not employees. The grandstand is constructed for the use of spectators who are there because they want to see a ball game, and it is during the course of the game that foul balls are hit. Attendance is voluntary and, in further contrast to an employment situation, spectators have a choice as to where they will sit.

It is the *nature* of a place which governs the reasonableness of employing certain safety measures. The nature of the stadium is that of a place of public assembly for the enjoyment of sports. It is known not only to the owners, but to the spectators who attend the games, that baseballs are frequently hit foul into the stands. Plaintiff knew this; she testified that she had attended 15 to 20 Braves games before the accident and in practically every game she saw balls batted into the grandstand and into the general area where she sat on the occasion she was hit. She made no effort to obtain a seat behind the backstop screen although she knew that seats in that area are available.

As this court observed in *Lee v. National League Baseball Club* (1958), 4 Wis. (2d) 168, 177, 89 N. W. (2d) 811, of a spectator who buys a ticket for a seat in an unprotected section and is struck by a batted ball:

"Such a person knows in advance that the park owner or operator has taken no steps to guard against such a contingency happening, as well as that it is likely to occur."

In *Prehn v. C. Niss & Sons, Inc.* (1939), 233 Wis. 155, 157, 288 N. W. 736, this court said:

"When an employer erects a suitable instrument necessary for the conduct of his business in open view to all so that anyone exercising ordinary care will know of its presence, he is acting within his rights. *Erbe v. Maes,* 226 Wis. 484, 277 N. W. 111; *Heckel v. Standard Gateway Theater,* 229 Wis. 80, 281 N. W. 640. There is no room under the evidence in this case for a claim that a trap existed; and as to the general condition and knowledge thereof on the part of the plaintiff Sophia Prehn, there is no countervailing evidence to that which indicates she must have been aware of the presence of the platform."

In the *Lee Case, supra,* there was also mention of the "known propensity of spectators to scramble for balls batted

into the stands," and it is likewise a matter of common knowledge that most baseball fans are eager to retrieve foul balls as souvenirs. We may mention that the radio broadcasters of Braves games keep a fish net handy to catch balls fouled in the direction of the press box in order to send them to handicapped or shut-in children. This interest in foul balls as souvenirs would seem to be an integral part of the excitement and enjoyment of attending a baseball game. In its decision in this case the trial court stated that to require the defendants to screen the entire ball park for the adequate protection of all persons in the stands would be unreasonable, considering the nature of the place, and that:

". . . the interest, the popularity, and the game of baseball as a national pastime would be doomed for the excitement and enthusiasm is so eloquently displayed to the court's own eyes upon the chasing or retrieving of a foul ball in the stands and sometimes to the detriment of others, would be drastically curtailed and a thing of the past for our American souvenir-loving sport spectators."

An expert witness for the defendants, William N. Woodbury, a structural engineer who has made a special study of stadium construction and written a number of technical articles on the subject, testified that in his opinion the Milwaukee county stadium is as safely built, constructed, and maintained as the nature of the same would reasonably permit. He testified that the standard backstop in a baseball stadium is placed behind home plate because "foul tips" flying back to the stands behind home plate travel at a very high speed and spectators in that area must rely on the screen for protection, but that a "foul tip" cannot be hit outside of a very narrow area in back of home plate because the positions of the pitcher and batter are fixed. He further testified that spectators in the stands nearest the backstop screen but not protected by it are "protected by the fact that the balls that come in their area are high fouls that they can watch;" that those seated

out toward the foul lines, which is where the plaintiff sat on the occasion she was hit, "are protected by the fact that their distance from home plate gives them an opportunity to protect themselves against a batted ball. So in that respect, I consider the stands safe."

While assumption of risk is not a defense under the safe-place statute, *Washburn v. Skogg* (1931), 204 Wis. 29, 233 N. W. 764, 235 N. W. 437, contributory negligence is. Frequenters of a public building are under an obligation to exercise ordinary care for their own safety. *Du Rocher v. Teutonia Motor Car Co.* (1925), 188 Wis. 208, 205 N. W. 921.

Plaintiff's seat was located 234 feet from home plate. Others immediately around her saw the ball hit and coming toward them. Plaintiff, however, was occupied with marking her score card. She testified:

"Well I just heard the crack of the ball, I mean the batter had hit the ball and everyone was jumping up and I heard the voices say it is coming over this way. Meantime I was still marking score and I looked up again and slightly tilted my head and it was right here. I was hit in the head."

In other words, while the other spectators seated around the plaintiff saw the ball hit, jumped up, observed it coming toward them, and cried out about it, she kept her eyes fixed elsewhere. It follows from her own testimony that had she been watching the game, had she been taking any precaution for her own safety, which she knew was necessary, she would have had ample time to avoid being hit by the ball. The enjoyment of watching a baseball game may include activities such as scorekeeping which momentarily take a spectator's eyes from the playing field, but since it is common knowledge that foul balls are frequently batted into the grandstand, ordinary care would dictate that such activities be engaged in during intervals when balls are not being batted.

We have set out in considerable detail the facts from which it could be inferred that there was no violation of the safe-place statute by failure to have protection for spectators in that part of the grandstand where plaintiff was seated. However, we find that the evidence of contributory negligence is so strong that it is unnecessary to decide whether such failure is a violation. We are convinced that the plaintiff—in voluntarily going to the game, sitting where she did, ignoring the fact that the batter was at bat, ignoring the noise and excitement after hearing the report of the bat hitting the ball, and in failing to take any precaution for her own safety—was at least as negligent as the defendants, assuming defendants were negligent under the safe-place statute.

*By the Court.*—Judgment affirmed.

FAIRCHILD, J. (*concurring in part; dissenting in part*). The parties apparently waived trial by jury and the questions of fact were decided by the trial judge. He made a finding that the stadium is as safe as the nature of the premises will permit without interfering with the enjoyment of the game. It must be conceded that it was possible to have constructed a net which would have made it safer for plaintiff. What the trial judge did was to determine that the erection of a net for greater safety would unreasonably impair the enjoyment of watching the game—the purpose for which the stadium exists. I think this is a proper question of fact under the safe-place statute and that the finding of the trial court can be sustained. Such finding would not, however, be binding upon a jury or judge in a case brought by a different plaintiff.

The majority of this court has concluded as a matter of law that even if defendants' failure to erect a net were deemed a violation of the safe-place statute, plaintiff's contributory negligence would be at least equal to the negligence of de-

fendants. I must respectfully disagree with that conclusion. In my view the question of plaintiff's negligence and comparison with that of defendants would also be an issue of fact, to be decided by a jury, or by a judge if trial by jury be waived.